WATERBURY HOTEL EQUITY, LLC *v.*
CITY OF WATERBURY
(AC 23392)

Lavery, C. J., and Dranginis and Berdon, Js.

Argued September 18, 2003—officially released October 12, 2004

*Ward J. Mazzucco*, with whom, on the brief, were *Elizabeth S. Lachterman* and *Frances Codd Slusarz*, for the appellant (plaintiff).

*Charles E. Oman III*, for the appellee (defendant).

*Opinion*

LAVERY, C. J. In this tax appeal, the plaintiff, Waterbury Hotel Equity, LLC, claims that the trial court failed to uphold the law of the case that was established in an earlier summary judgment ruling. Specifically, the plaintiff claims that the law, as articulated in the earlier summary judgment ruling, was correct in stating that the plaintiff was not collaterally estopped from bringing its appeal because a 1988 stipulated judgment of assessed valuation entered into by the defendant, the city of Waterbury, and the plaintiff's predecessor in interest had no effect after 1990. The plaintiff claims that a genuine issue of material fact remained concerning the true and actual value of the property for the assessment years under appeal because of the defendant's use of a 1980 decennial revaluation throughout the 1990 decennial revaluation period. We conclude that the statement of the law articulated in the summary judgment ruling was correct, that it should be maintained as the law of the case and that the plaintiff should be permitted to proceed with its appeal of tax assess-

ments made on its property from 1996 through 2000. We therefore reverse the judgment of the trial court.

The record reveals the following relevant facts and procedural history. This case arises from an appeal to the Superior Court from the decision by the Waterbury board of assessment appeals denying the plaintiff's request for a reduction of five consecutive assessments on its real property.[1] The plaintiff appealed pursuant to General Statutes § 12-117a,[2] claiming that the valua-

[1] The plaintiff brought its appeal to the Superior Court in an application dated June 16, 1997, in accordance with General Statutes § 12-117a, claiming that the valuation of its property used in the October 1, 1996 assessment by the defendant was grossly excessive, disproportionate and unlawful. The plaintiff amended its appeal on February 11, 1998, to add a second count for the subsequent assessment of October 1, 1997. The plaintiff added a third count for the assessment of October 1, 1998, through an amendment dated November 4, 1998. In another amendment, also dated November 4, 1998, the plaintiff added a fourth count for wrongful assessment under General Statutes § 12-119, claiming a tax was laid on the subject property on October 1, 1998, that was computed on an assessment that was manifestly excessive and could not have been arrived at except by disregarding the statutes for determining the valuation of property. The plaintiff again amended its June 16, 1997 appeal on July 21, 2000, adding a fifth count under § 12-117a for the assessment of October 1, 1999. Also on July 21, 2000, the plaintiff added a sixth count under § 12-119 for the assessment of October 1, 1999. The plaintiff amended its appeal a final time on August 30, 2001, adding a seventh and an eighth count under §§ 12-117a and 12-119, respectively, for the October 1, 2000 assessment date. The plaintiff requested in its appeal that the valuation of its property on all the relevant assessment dates be reduced to 70 percent of its true and actual value.

[2] General Statutes § 12-117a provides: "Any person, including any lessee of real property whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, claiming to be aggrieved by the action of the board of tax review or the board of assessment appeals, as the case may be, in any town or city may, within two months from the date of the mailing of notice of such action, make application, in the nature of an appeal therefrom, with respect to the assessment list for the assessment year commencing October 1, 1989, October 1, 1990, October 1, 1991, October 1, 1992, October 1, 1993, October 1, 1994, or October 1, 1995, and with respect to the assessment list for assessment years thereafter, to the superior court for the judicial district in which such town or city is situated, which shall be accompanied by a citation to such town or city to appear before said court. Such citation shall be signed by the same authority and such appeal shall be returnable at the

tion of its property in the years 1996 through 2000 was grossly excessive, disproportionate and illegal. The plaintiff also appealed pursuant to General Statutes § 12-119,[3] claiming that a tax was laid on its property for the years 1998 through 2000 that was computed on

same time and served and returned in the same manner as is required in case of a summons in a civil action. The authority issuing the citation shall take from the applicant a bond or recognizance to such town or city, with surety, to prosecute the application to effect and to comply with and conform to the orders and decrees of the court in the premises. Any such application shall be a preferred case, to be heard, unless good cause appears to the contrary, at the first session, by the court or by a committee appointed by the court. The pendency of such application shall not suspend an action by such town or city to collect not more than seventy-five per cent of the tax so assessed or not more than ninety per cent of such tax with respect to any real property for which the assessed value is five hundred thousand dollars or more, and upon which such appeal is taken. If, during the pendency of such appeal, a new assessment year begins, the applicant may amend his application as to any matter therein, including an appeal for such new year, which is affected by the inception of such new year and such applicant need not appear before the board of tax review or board of assessment appeals, as the case may be, to make such amendment effective. The court shall have power to grant such relief as to justice and equity appertains, upon such terms and in such manner and form as appear equitable, and, if the application appears to have been made without probable cause, may tax double or triple costs, as the case appears to demand; and, upon all such applications, costs may be taxed at the discretion of the court. If the assessment made by the board of tax review or board of assessment appeals, as the case may be, is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes, together with interest and any costs awarded by the court, or, at the applicant's option, shall be granted a tax credit for such overpayment, interest and any costs awarded by the court. Upon motion, said court shall, in event of such overpayment, enter judgment in favor of such applicant and against such city or town for the whole amount of such overpayment, together with interest and any costs awarded by the court. The amount to which the assessment is so reduced shall be the assessed value of such property on the grand lists for succeeding years until the tax assessor finds that the value of the applicant's property has increased or decreased."

[3] General Statutes § 12-119 provides: "When it is claimed that a tax has been laid on property not taxable in the town or city in whose tax list such property was set, or that a tax laid on property was computed on an assessment which, under all the circumstances, was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of such property, the owner

an assessment that was manifestly excessive and could not have been arrived at except by disregarding the statutes for determining valuation.

The subject property, which consists of 10.4 acres, is located at 3580 East Main Street in Waterbury, and is improved with a 279 room full service hotel with conference and function rooms, a health club, swimming pool and restaurant. The hotel was completed in the 1980s by its original developers, Joseph Calabrese and Loretta Calabrese.

The defendant valued the improved property at $7.5 million on October 1, 1986. The tax assessment as of that date was 70 percent of that value or $5.25 million. The Calabreses appealed from the defendant's assessment. That action was terminated by way of a stipulated judgment, dated January 12, 1988, providing that the true and actual value of the property on October 1, 1986, was $6,642,857, making the assessed value $4.65 million. The stipulated judgment concluded by ordering the defendant to grant the Calabreses a tax credit in the amount of $35,280 to be applied by the defendant against the taxes due by the Calabreses for the grand list year of October 1, 1986.

thereof or any lessee thereof whose lease has been recorded as provided in section 47-19 and who is bound under the terms of his lease to pay real property taxes, prior to the payment of such tax, may, in addition to the other remedies provided by law, make application for relief to the superior court for the judicial district in which such town or city is situated. Such application may be made within one year from the date as of which the property was last evaluated for purposes of taxation and shall be served and returned in the same manner as is required in the case of a summons in a civil action, and the pendency of such application shall not suspend action upon the tax against the applicant. In all such actions, the Superior Court shall have power to grant such relief upon such terms and in such manner and form as to justice and equity appertains, and costs may be taxed at the discretion of the court. If such assessment is reduced by said court, the applicant shall be reimbursed by the town or city for any overpayment of taxes in accordance with the judgment of said court."

The defendant, pursuant to General Statutes (Rev. to 1989) § 12-62, was required to conduct its decennial revaluation in 1990.[4] The defendant last implemented a city-wide revaluation on October 1, 1980. It is undisputed that the defendant did not conduct a revaluation in 1990, as was required under § 12-62 and did not conduct a revaluation throughout the 1990 decennial revaluation period. During that period, the defendant continued to use as the basis of its assessments of the plaintiff's property the October 1, 1980 revaluation and the 1988 stipulated judgment. The defendant conducted a new city-wide revaluation effective with the grand list of October 1, 2001.

The plaintiff acquired the subject property in February, 1997.[5] The plaintiff alleged in its appeal that on the assessment date, October 1, 1996, a tax assessor for

[4] General Statutes (Rev. to 1989) § 12-62 provides: "(a) Commencing October 1, 1978, the assessors of all towns, consolidated towns and cities and consolidated towns and boroughs shall, no later than ten years following the last preceding revaluation of all real property and every ten years after each such revaluation, view all of the real estate of their respective municipalities, and shall revalue the same for assessment and, in the performance of these duties, except in any municipality where there is a single assessor, at least two of the assessors shall act together, and all valuations shall be separately approved by a majority of the assessors. . . .

"(b) During the conduct of any such revaluation in accordance with subsection (a) of this section in any municipality and during a period of not less than twelve months immediately following the date on which such revaluation becomes effective, any criteria, guidelines, price schedules or statement of procedures used in such revaluation by the assessors or any person or organization performing such revaluation under contract, shall be available for public inspection in the assessor's office in such municipality in the manner provided for public records in subsection (a) of section 1-19. The provisions of this subsection shall be applicable to any such criteria, guidelines, price schedules or statement of procedures placed on file in such assessor's office on or after October 1, 1979."

[5] The plaintiff acquired the subject property through a trustee's deed, recorded February 7, 1997, in volume 3439 at page 340 of the Waterbury land records, and a certificate of strict foreclosure, dated February 6, 1997, also recorded February 7, 1997, in volume 3440 at page one of the Waterbury land records.

the defendant valued the subject property, then owned by the Calabreses, for a grossly excessive and disproportionate amount. The plaintiff appealed to the board of assessment appeals in March, 1997, pursuant to General Statutes § 12-111, claiming aggrievement by the actions of the defendant's assessors. The board of assessment appeals took no action to change the assessment and denied the plaintiff's application for relief in April, 1997.

On June 16, 1997, the plaintiff filed an appeal in the trial court pursuant to § 12-117a from the board's decision refusing to reduce the assessment of its property for the grand list of October 1, 1996, and, through amendments to its original appeal, subsequent assessments based on the grand lists of October 1, 1997, October 1, 1998, October 1, 1999, and October 1, 2000. The plaintiff added additional counts under § 12-119 for the 1998, 1999 and 2000 assessments. In the prayer for relief, the plaintiff sought a reduction of the assessed values.

On March 15, 1999, the defendant filed a motion for summary judgment, arguing that the plaintiff was collaterally estopped from bringing its appeal because it was bound by a 1988 stipulated agreement entered into with the defendant by the plaintiff's predecessor in interest.[6] The court, *Leheny, J.,* denied the defendant's motion for summary judgment in its November 5, 1999 memorandum of decision. The court ruled: "Because the stipulated judgment of 1988 refers to the decennial revaluation of 1980, it does not apply to the property valuation for those years which follow 1990. . . . Accordingly, a genuine issue of material fact exists as to the valuation of the subject property."

[6] The stipulated agreement entered into by the defendant and the plaintiff's predecessor in interest; *Calabrese* v. *Board of Tax Review,* CV 87-0079949, *Henebry, J.;* is dated January 12, 1988, and stipulates that the true and actual value and assessed value of the applicant's property on October 1, 1986, was $6,642,857, actual value, and $4,650,000, assessed value.

The defendant subsequently filed a motion for articulation. In its articulation, the court explained: "There is a question of fact as to whether the original evaluation was in error and, therefore, would not apply to the property valuations for those years which follow 1990. This claim may not be collaterally estopped and, therefore, the defendant's motion for summary judgment was properly denied."

The case went to trial on July 29, 1997. Thereafter, the court, *Scheinblum, J.*, rendered judgment in favor of the defendant, stating: "Although the stipulation dealt with the grand list year, 1986, that agreed upon valuation is the fair market value for the grand list of every year after 1986 until the next revaluation." The plaintiff now appeals from that judgment.

On October 9, 2003, after oral argument in this case, this court ordered simultaneous supplemental briefs from the parties addressing three issues concerning the defendant's failure to conduct its mandatory 1990 revaluation: (1) Because the defendant was required by statute to have a revaluation in 1990 and failed to do so, why should the plaintiff not be entitled to bring appeals of its assessments after 1990? (2) How does § 12-62 et seq. affect the plaintiff's right to appeal? and (3) Did the defendant comply with § 12-62, and if it did not for any of the assessment years under appeal, why should the plaintiff not be entitled to bring this appeal?

I

At the outset, we set forth our standard of review. The court drew legal conclusions on the basis of its interpretation of Appellate Court precedent. Therefore, our review is plenary. See *DeSena* v. *Waterbury*, 249 Conn. 63, 72–73, 731 A.2d 733 (1999). Mindful of the foregoing standard of review, we now consider the plaintiff's issues on appeal.

The plaintiff first claims that the court, *Scheinblum*, *J.*, failed to uphold the law of the case that was established by the ruling on the defendant's motion for summary judgment. Specifically, the plaintiff argues that Judge Leheny was correct as a matter of law when she concluded that the plaintiff was not collaterally estopped from bringing its appeal because the 1988 stipulated agreement entered into by the defendant and the plaintiff's predecessor in interest had no effect after 1990. The plaintiff also argues that Judge Leheny was correct when she concluded that a genuine issue of material fact remained concerning the true and actual value of the property for the assessment years under appeal because the defendant had used a 1980 revaluation throughout the 1990 revaluation period. We agree with the plaintiff.

In considering the law of the case doctrine, our Supreme Court has recognized that "[a] judge should hesitate to change his own rulings in a case and should be even more reluctant to overrule those of another judge." *Breen* v. *Phelps*, 186 Conn. 86, 99, 439 A.2d 1066 (1982). Nevertheless, "[t]he law of the case is not written in stone but is a flexible principle of many facets adaptable to the exigencies of the different situations in which it may be invoked. . . . Our Supreme Court has recognized that the law of the case doctrine is not one of unbending rigor . . . . A judge is not bound to follow the decisions of another judge made at an earlier stage of the proceedings, and if the same point is again raised he has the same right to reconsider the question as if he had himself made the original decision. . . . In essence [the law of the case] expresses the practice of judges generally to refuse to reopen what has been decided and is not a limitation on their power. . . . Where a matter has previously been ruled upon interlocutorily, the court in a subsequent proceeding in the case *may* treat that decision as the law of the case, if it is

of the opinion that the issue was correctly decided, in the absence of some new or overriding circumstance." (Citations omitted; emphasis in original; internal quotation marks omitted.) *Stevens* v. *Hartford Accident & Indemnity Co.*, 39 Conn. App. 429, 437–38, 664 A.2d 826 (1995).

"From the vantage point of an appellate court it would hardly be sensible to reverse a correct ruling by a second judge on the simplistic ground that it departed from the law of the case established by an earlier ruling. . . . In an appeal to [an appellate court] where views of the law expressed by a judge at one stage of the proceedings differ from those of another at a different stage, the important question is not whether there was a difference but which view was right." (Citations omitted; internal quotation marks omitted.) *Breen* v. *Phelps*, supra, 186 Conn. 100. In the present case, we must therefore determine whether the statement of the law concerning the viability, after 1990, of the 1988 stipulated agreement between the defendant and the plaintiff's predecessor in interest was correctly stated in the summary judgment ruling or the court's subsequent memorandum of decision.

A

We conclude that the statement of the law set forth in the summary judgment ruling was correct. We reach that conclusion not because the judge issuing the subsequent memorandum of decision was barred under the law of the case doctrine from reconsidering the law as stated in the earlier summary judgment ruling, but because the view of the law expressed in the earlier summary judgment ruling was correct. In reaching that conclusion, we determine that the court, in its summary judgment ruling, properly concluded that a genuine issue of material fact remained concerning whether the 1980 revaluation accurately reflected the true and actual

value of the plaintiff's property in the years 1996 through 2000.

"Municipalities have no powers of taxation other than those specifically given by statute, and strict compliance with the statutory provisions is a condition precedent to the imposition of a valid tax." *Empire Estates, Inc.* v. *Stamford*, 147 Conn. 262, 264, 159 A.2d 812 (1960). It is a municipal tax assessor's duty with respect to the assessment of property to determine its fair market value periodically as required by the legislature. General Statutes § 12-62. "From its inception in 1917, until its amendment in 1995, § 12-62 provided that town assessors were required, no later than ten years after the last preceding revaluation, to view all of the real estate in their respective municipalities and to revalue it for assessment." *DeSena* v. *Waterbury*, supra, 249 Conn. 74.

The town assessor's duties under § 12-62 are mandatory, not discretionary, and town assessors are obligated to conform to the requirements of § 12-62. *State ex rel. Eastern Color Printing Co.* v. *Jenks*, 150 Conn. 444, 450–51, 190 A.2d 591 (1963). "[Town assessors are] called upon to perform ministerial acts in obedience to the mandate of legal authority, without regard to or the exercise of [their] own judgment on the propriety of the acts being done." Id., 451. The failure of the defendant to make and to complete another revaluation by the statutorily mandated revaluation date constitutes a disregard of the mandate of the statute. "Any other or a contrary determination . . . would make the statutory requirement meaningless by permitting an assessor an unlimited period in which to file a revalued list." *Chamber of Commerce of Greater Waterbury, Inc.* v. *Murphy*, 179 Conn. 712, 719, 427 A.2d 866 (1980).

Once the assessor determines the fair market value, that valuation remains the same until the next statuto-

rily mandated revaluation takes place, unless the assessor decides to undertake an interim revaluation. *Pauker* v. *Roig*, 232 Conn. 335, 342–43, 654 A.2d 1233 (1995). In any event, a periodic revaluation is valid only for the length of time allowed by statute. See *Uniroyal, Inc.* v. *Board of Tax Review*, 182 Conn. 619, 633, 438 A.2d 782 (1981) (1971 revaluation in Middlebury valid for period of ten years pursuant to General Statutes [1958 Rev.] § 12-62).

The record shows that rather than conducting a new decennial revaluation in 1990 as mandated by § 12-62, the defendant continued to use its 1980 revaluation during the 1990 decennial revaluation period. The defendant therefore used a sixteen year old grand list from 1980 as the basis for its assessment of the plaintiff's property on October 1, 1996, after it failed to carry out its statutory mandate to revalue in 1990.[7]

In light of the foregoing, we conclude that the 1980 revaluation and its related stipulated judgment were invalid for use during the 1990 decennial revaluation period. The invalidity of the 1980 revaluation left unresolved whether the 1980 revaluation, along with its related stipulated judgment, accurately reflected the true and actual value of the plaintiff's property for the defendant's assessments of 1996 through 2000. Accordingly, we conclude that the court's summary judgment ruling was correct in determining that there was an issue of material fact as to the true and actual value of the plaintiff's property in the years 1996 through 2000.

B

Next, we conclude that the court's summary judgment ruling correctly determined, as a matter of law,

---

[7] We note that on cross-examination, David Dietsch, the defendant's assessor since 1996, attributed the defendant's failure to conduct its 1990 revaluation or any other revaluation throughout the 1990s to reasons of political expediency.

that the plaintiff's claim could not be collaterally estopped because the 1988 stipulated judgment between the defendant and the plaintiff's predecessor in interest referred only to the 1980 decennial revaluation period and did not apply to the property valuation after 1990.

"Collateral estoppel, like its cousin res judicata, presents a question of law that we review de novo. . . . Collateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment." (Citation omitted; internal quotation marks omitted.) *Linden Condominium Assn., Inc.* v. *McKenna*, 247 Conn. 575, 596, 726 A.2d 502 (1999).

We note that "[c]ollateral estoppel may be invoked against a party to a prior adverse proceeding or against those in privity with that party." *Aetna Casualty & Surety Co.* v. *Jones*, 220 Conn. 285, 303, 596 A.2d 414 (1991). "[A] successor in interest is one who follows another in ownership or control of property . . . and does not exclude those who take by deed, grant, gift, purchase or contract." (Internal quotation marks omitted.) *Bobhic Associates Ltd. Partnership* v. *Carrabba Ob-Gyn Associates, Inc.*, 44 Conn. App. 719, 722, 692 A.2d 826 (1997).

When a previous owner stipulated to an agreed on value of the property and the court has rendered judgment on that stipulation, the parties are collaterally estopped from relitigating the same issue of valuation of the property only for the duration of that statutorily prescribed revaluation period. The adjusted revaluation memorialized in the stipulated judgment is conclusive

as to the value of the property for that statutorily pre-
scribed revaluation period. See *Uniroyal, Inc.* v. *Board
of Tax Review*, supra, 182 Conn. 633–34. "The fact that
[the adjusted revaluation] has been applied to succes-
sive grand lists does not permit a different result. Con-
sideration of the contrary result demonstrates the
inefficacy of permitting a litigant to contest the validity
of an assessment figure on ten different occasions (i.e.,
each of the ten years permitted by General Statutes
§ 12-62)." Id., 633–34.

To allow a taxpayer again to challenge the municipali-
ty's revaluation after having arrived at a stipulated judg-
ment within the same statutorily prescribed revaluation
period would lead to impermissible interim revaluations
between statutorily mandated revaluations. "[T]he rem-
edy of revaluation was established by the legislature
and it was the judgment of the legislature that the rem-
edy need only be available once each decade.

"The legislature has also provided, however, for
required revaluations in the interim years between
decennial revaluations in very limited circumstances.
The only circumstances provided by statute that *require*
an assessor to conduct an interim revaluation of a prop-
erty are: (1) damage to a property requiring complete
demolition or total reconstruction; General Statutes
§ 12-64a; and (2) new construction completed on the
property. General Statutes § 12-53a.

"[Our Supreme Court has] expressly rejected the
argument that changes in property value resulting from
market conditions constitute a sufficient basis upon
which a taxpayer may compel an interim revaluation of
property. [It] held in [*Uniroyal, Inc.*] that the decennial
revaluation of real property mandated by § 12-62 is the
exclusive remedy provided by the legislature for varia-
tions in the effect of market conditions . . . ." (Empha-

sis in original; internal quotation marks omitted.) *DeSena* v. *Waterbury*, supra, 249 Conn. 74–77.

The plaintiff, in the present case, is a successor in interest and therefore in privity with the previous owners because it gained title to the subject property by deed. Nevertheless, we determine that the plaintiff is not barred by collateral estoppel because, although a property owner is collaterally estopped from challenging subsequent tax assessments on the basis of a decennial revaluation in which the value of the property was determined in a prior tax appeal *within* that same revaluation period, the property owner is not collaterally estopped from challenging a lapsed decennial revaluation illegally used *outside* of its related, statutorily prescribed valuation period.

The value of the plaintiff's property, as determined by the 1986 tax appeal culminating in the 1988 stipulated judgment, was related to the 1980 valuation in effect for the 1980 decennial revaluation period. The present 1996 tax appeal concerns the value of the property, as determined by an invalid 1980 revaluation, in the 1990 decennial revaluation period. Consequently, we conclude that the special defense of collateral estoppel does not bar the plaintiff's tax appeals under §§ 12-117a and 12-119. A contrary determination would make the statutory requirement meaningless by permitting an assessor an unlimited period in which to file a revalued list.

We further conclude that the plaintiff's tax appeals for the years 1996 through 2000, in response to the failure of the defendant to conduct its mandatory 1990 revaluation and its continued use of its 1980 revaluation in place of the 1990 revaluation, do not constitute a request for an impermissible interim revaluation under the rule of law articulated in *DeSena* v. *Waterbury*, supra, 249 Conn. 63.

Our Supreme Court, in *DeSena* v. *Waterbury*, supra, 249 Conn. 63, articulated the law concerning the narrow set of conditions under which a municipality could be compelled by a taxpayer to conduct an interim revaluation.[8] The only circumstances requiring an assessor to

[8] We note that in *DeSena* v. *Waterbury*, supra, 249 Conn. 63, an appeal involving the defendant, a taxpayer appealed from the defendant's tax assessments on his property from 1995 and 1996 under only General Statutes § 12-117a, which is proximate to the first year in which the plaintiff in the present case appealed from the tax assessment of its property. Thus, it appears that the *DeSena* court presumed that the taxpayer's appeal of the defendant's 1995 and 1996 tax assessments were requests for impermissible interim revaluations.

Our review of the record and briefs before the *DeSena* court, however, reveals that the taxpayer's claim was always presented as a request for an interim revaluation, which was compelled, he argued, under *Ralston Purina Co.* v. *Board of Tax Review*, 203 Conn. 425, 525 A.2d 91 (1987), by his decision to go out of business. The issue of what impact, if any, the defendant's failure to conduct its mandated 1990 revaluation and its continued use of its 1980 revaluation throughout the 1990s would have on the taxpayer's request for a reduction in the valuation of its property was never raised, by either party, in the trial court or by the *DeSena* court itself and, consequently, was never briefed or argued. Because that issue was never raised, the *DeSena* court was unable to address squarely the possible impact, if any, of the defendant's failure to revalue in 1990 on a taxpayer's appeal for a reduction of the valuation of its property.

Here, we have, sua sponte, raised the issue. Because "[o]ur Supreme Court does not approve of this court reaching and deciding issues that were not raised or briefed by the parties;" *State* v. *Rosario*, 81 Conn. App. 621, 640, 841 A.2d 254, cert. denied, 268 Conn. 923, 848 A.2d 473 (2004); the parties have, at our request, briefed the issue, which we now address. See *Fort Trumbull Conservancy, LLC* v. *Alves*, 262 Conn. 480, 522, 815 A.2d 1188 (2003) ("we have even criticized, and reversed, the Appellate Court for reaching out and deciding a case before it on a basis that had never been raised or briefed").

We also note that the plaintiff in *DeSena* appealed only under § 12-117a and not, as in the present case, under § 12-117a and General Statutes § 12-119. "We note that [General Statutes] §§ 12-118 [now § 12-117a] and 12-119 differ in purpose. The first is an avenue providing for a review of the amount of the assessment made on taxable property, whereas the second contests the taxability of the property." *Woodbury* v. *Pepe*, 6 Conn. App. 330, 333, 505 A.2d 723 (1986). In the present case, the plaintiff claims in its tax appeal that, under §§ 12-117a and 12-119, the defendant overassessed the plaintiff's property when it used a 1980 revaluation during the 1990 revaluation period. It is undisputed that the defendant disregarded its statutorily mandated duty

conduct an interim revaluation that would reduce a tax burden are, as provided by § 12-64a, damage to the property requiring complete demolition or total reconstruction. Id., 87. Our Supreme Court has consistently defined an interim revaluation in relation to the legislatively mandated, periodic revaluation requirement of § 12-62 as a revaluation conducted in the years *between* statutorily prescribed revaluations. E.g., id., 74.

The distinction between an impermissible interim revaluation and a challenge to an assessment on the basis of a valuation from a prior revaluation period in a new revaluation period is identifiable and justifiable. A request for an interim revaluation is brought because the most recent revaluation allegedly is inaccurate due to altered conditions since the most recent statutorily prescribed revaluation. In *Uniroyal, Inc.* v. *Board of Tax Review*, supra, 182 Conn. 629, our Supreme Court reviewed a request for an interim revaluation and concluded that "[t]he remedy of revaluation was established by the legislature and it was the judgment of the legislature that the remedy need only be available once each decade." An interim revaluation is, in essence, a challenge to the legislatively designated revaluation time period.

The plaintiff here seeks to adjust a valuation subsequent to its statutory term of validity because of its continued use during a new statutorily prescribed valuation period. The plaintiff does not challenge a revaluation made within the same statutorily prescribed revaluation period as its appeal. The plaintiff instead challenges what it alleges to be an illegal assessment, using a valuation from a prior revaluation period, that resulted in overassessment of its property. The plaintiff

to revalue in 1990. "[T]he failure . . . to make and complete another revaluation by [the statutorily mandated revaluation date] constitute[s] a disregard of the mandate of the statute." (Internal quotation marks omitted.) *Chamber of Commerce of Greater Waterbury, Inc.* v. *Murphy*, supra, 179 Conn. 719.

seeks to remedy that alleged overassessment by requesting the adjustment of an invalid 1980 revaluation illegally used by virtue of the defendant's disregard of its statutory duty to revalue in 1990. Because it is true that § 12-117a prohibits a taxpayer from demanding that the assessor conduct an interim revaluation, but allows a taxpayer to challenge an illegal assessment *within* a statutorily mandated revaluation period; see *Davis* v. *Westport*, 61 Conn. App. 834, 852, 767 A.2d 1237 (2001); the law must also allow a taxpayer to challenge an illegal assessment *outside* the prior statutorily mandated revaluation period. Any other conclusion effectively would confine the use of §§ 12-117a and 12-119 to within a statutorily prescribed revaluation period, something that, if the legislature had intended such an effect, it could have stated explicitly in the text of the statutes. As our Supreme Court has stated: "If we are to interpret the effect of the mandatory language in § 12-62 consistently . . . we must either bar all appeals that challenge decennial revaluations, or we must allow a taxpayer to challenge a decennial revaluation *whenever* it is used as the basis for a yearly assessment. We conclude that the latter interpretation is the more logical . . . ." (Emphasis added.) *Jupiter Realty Co.* v. *Board of Tax Review*, 242 Conn. 363, 368, 698 A.2d 312 (1997).

The record in the present case shows that the defendant continued to use its 1980 revaluation during the 1990 decennial revaluation period. Thus, the defendant assessed the plaintiff's property in the years 1996 through 2000 using the 1988 stipulated agreement, related to the 1980 revaluation period. The plaintiff requests an adjustment to an invalid valuation and antiquated stipulated agreement used to assess its property in the years 1996 through 2000 in the wake of the defendant's failure to revalue in 1990.

To permit a municipality to characterize a taxpayer's challenge to its failure to revalue and its continued

illegal use of an invalid valuation from a prior valuation period under §§ 12-117a and 12-119 as a request for an interim revaluation would, in effect, allow a municipality to circumvent its legislatively prescribed duty to remedy changes in market conditions every statutorily mandated revaluation period. We find no support for denying taxpayers the right to have their decennial revaluation reflect the property's true value at the time of the decennial revaluation in our case law concerning interim valuations. See id., 374.

We determine that although the ultimate relief of interim revaluations within a statutorily prescribed revaluation period and appeals of assessments on the basis of valuations outside their original term of validity might be similar—a lowering of present and future assessment values—the grounds for relief are quite distinct. The former is an impermissible challenge to the legislatively mandated, statutorily prescribed remedy for fluctuation of property values *between* the mandatory revaluation dates while the latter is a challenge to an illegal assessment *outside* the mandatory revaluation dates. Accordingly, we conclude that the plaintiff's appeal does not constitute a request for an interim revaluation related to the same revaluation period, but a request for an adjustment to an invalid revaluation in response to its continued illegal use for assessments of the plaintiff's property in a new revaluation period due to the defendant's failure to conduct its statutorily required 1990 revaluation.

Although the law of the case doctrine permitted a subsequent judge to reach a different conclusion, the previous conclusion articulated in the summary judgment ruling determining that the 1988 stipulated agreement lost its efficacy after 1990 because it was not related to the new revaluation period and that the plaintiff therefore was not collaterally estopped from bringing its appeal was correct as a matter of law and

therefore should be maintained as the law of the case. The plaintiff's appeal should be sustained.

## II

On October 9, 2003, this court ordered simultaneous supplemental briefs from the parties addressing three issues concerning the defendant's failure to conduct its mandatory 1990 revaluation: (1) Since the defendant was required by statute to have a revaluation in 1990 and failed to do so, why should the plaintiff not be entitled to bring appeals of its assessments after 1990? (2) How does § 12-62 et seq. affect the plaintiff's right to appeal? and (3) Did the defendant comply with § 12-62 and, if it did not for any of the assessment years under appeal, why should the plaintiff not be entitled to bring this appeal?

After a review of the supplemental briefs, we conclude that our determination in part I is dispositive and deem it necessary to address only the defendant's argument that mandamus is the sole remedy available to the plaintiff to compel revaluation. We do so because if the defendant is correct that a writ of mandamus is the sole remedy available to the plaintiff to compel revaluation, then the Superior Court has no authority to hear a plaintiff's appeal under §§ 12-117a and 12-119.[9] We conclude that a writ of mandamus is not the sole, or even a possible, remedy available to address the harm of which the plaintiff complains.

"It is settled law in this jurisdiction that a writ of mandamus may issue only when three conditions exist: (1) The law imposes a duty—the performance of which is mandatory and not discretionary—on the party

---

[9] We note that in addition to briefing that argument in the defendant's supplemental brief, the defendant also raised the argument on page twelve of its original appellate brief and in part II of its July 20, 1999 reply to the plaintiff's memorandum of law in opposition to the defendant's motion for summary judgment.

against whom the writ is sought; (2) the party applying for the writ has a clear legal right to have the duty performed; (3) there is no other adequate remedy." *Chamber of Commerce of Greater Waterbury* v. *Murphy,* supra, 179 Conn. 717.

The defendant's argument that a writ of mandamus is the sole remedy available to the plaintiff to address the harm of which the plaintiff complains fails to meet the third condition required by Connecticut law for the issuance of a writ of mandamus because our legislature has provided statutory procedures for aggrieved taxpayers to appeal from assessments of their property. Our Supreme Court has acknowledged that a "long-standing history of the right to appeal annual assessments evidences a public policy in favor of allowing taxpayers to question those charged with assessing property for taxation purposes." *Jupiter Realty Co.* v. *Board of Tax Review,* supra, 242 Conn. 370.

"[T]he legislature has established two primary methods by which taxpayers may challenge a town's assessment or revaluation of their property. First, any taxpayer claiming to be aggrieved by an action of an assessor may appeal, pursuant to General Statutes § 12-111, to the town's board of tax review. The taxpayer may then appeal, pursuant to General Statutes [§ 12-117a], an adverse decision of the town's board of tax review to the Superior Court. The second method of challenging an assessment or revaluation is by way of § 12-119. . . . [Section] 12-119 allows a taxpayer one year to bring a claim that the tax was imposed by a town that had no authority to tax the subject property, or that the assessment was manifestly excessive and could not have been arrived at except by disregarding the provisions of the statutes for determining the valuation of [the real] property . . . ." *Interlude, Inc.* v. *Skurat,* 253 Conn. 531, 537–38, 754 A.2d 153 (2000).

Here, the plaintiff claims, under § 12-117a, that the defendant overvalued its property in assessments made for the years 1996 through 2000. The plaintiff also seeks to redress the defendant's allegedly wrongful assessment of its property pursuant to § 12-119 for the years 1998 through 2000, seeking such relief as to which justice and equity appertain. Our Supreme Court has determined that a mandamus action to revalue all property within the municipality is inappropriate when the plaintiff makes a claim, as it did here, under § 12-117a, that its property was overvalued. *Kays, Inc.* v. *Board of Tax Review*, 170 Conn. 477, 481, 365 A.2d 1207 (1976). Because, in the present case, the plaintiff claims that the defendant overassessed its property as a result of the defendant's continued use of its 1980 revaluation into the 1990 decennial revaluation period, remedies under §§ 12-117a and 12-119 were available, thereby precluding the possibility of the plaintiff successfully obtaining a writ of mandamus.[10] We further find that to direct a plaintiff seeking relief from an illegal and invalid tax assessment levied on his property to seek a writ of mandamus is a remedy mismatched to the harm to which it is directed in that the relief suggested is appropriate for the enforcement of a public duty rather than for the vindication of a private interest.

In light of the foregoing and because it is not the sole remedy available to the plaintiff, we conclude that the

[10] We note that in two leading cases in which taxpayers were successful in obtaining a writ of mandamus against a municipal tax assessor, *State ex rel. Eastern Color Printing Co.* v. *Jenks*, supra, 150 Conn. 444, and *Chamber of Commerce of Greater Waterbury, Inc.* v. *Murphy*, supra, 179 Conn. 712, the taxpayers made no allegations that they had sustained any special injury by the defendants' failure to revalue. In contrast with those cases, in *Kays, Inc.* v. *Board of Tax Review*, supra, 170 Conn. 477, a case in which the plaintiff, in addition to seeking a writ of mandamus, claimed that the defendant's assessment on its property was excessively high, the writ of mandamus was denied precisely because "[t]he plaintiff would have been entitled to relief under [§ 12-117a] if [it] could prove that [its] property was bearing a disproportionately high tax burden because of the defendant's failure to comply with § 12-64." Id., 481.

writ of mandamus is unavailable to the plaintiff and that the plaintiff has adequate remedies under §§ 12-117a and 12-119.

The judgment is reversed and the case is remanded with direction to sustain the plaintiff's appeal and for further proceedings in accordance with law.

In this opinion the other judges concurred.