TRINITY UNITED METHODIST CHURCH OF
SPRINGFIELD, MASSACHUSETTS *v.* DANIEL
LEVESQUE ET AL.
(AC 25458)

TRINITY UNITED METHODIST CHURCH OF
SPRINGFIELD, MASSACHUSETTS *v.*
GERALDINE ST. MARIE
(AC 25459)

Flynn, Bishop and West, Js.

Argued January 14—officially released April 25, 2005

*James W. Sherman*, for the appellants (defendants in both cases).

*Michael D. O'Connell*, with whom, on the brief, was *Erin L. Arcesi*, for the appellees (plaintiff in both cases).

*Opinion*

BISHOP, J. The defendants, Daniel Levesque, JoAnne Levesque, Brian Kelley and Geraldine St. Marie, appeal from the judgments of the trial court rendered in favor of the plaintiff, Trinity United Methodist Church of Springfield, Massachusetts, on its complaints in two summary process actions and on the defendants' coun-

terclaims.[1] On appeal, the defendants attack the judgments with a barrage of claims. The defendants claim that the court (1) incorrectly determined that they are the tenants of the plaintiff, (2) incorrectly found that a "mere paper chain of title" established the plaintiff's ownership of the subject premises, (3) violated the Connecticut Code of Evidence by not admitting into evidence certain testimony, (4) incorrectly applied constructive trust concepts rather than those relating to a resulting trust, (5) mistakenly admitted into evidence "the judgment in the case of *Smith* v. *Trinity United Methodist Church of Springfield, Massachusetts*, 47 Conn. Sup. 618, 821 A.2d 291 (2002), aff'd, 263 Conn. 135, 819 A.2d 225 (2003), and [found] facts and law therein and resulting therefrom," and (6) incorrectly deprived the defendants of a trial by jury. We affirm the judgments of the trial court.

The following facts and procedural history are relevant to our disposition of these appeals. In September, 2003, the plaintiff brought multicount summary process actions against the defendants seeking immediate possession of the premises at issue in Stafford. In response, the defendants filed answers, special defenses and counterclaims. In their special defenses, the defendants claimed that they had been given the right to occupy the premises by the beneficiaries of the 1943 Long Family Trust. Additionally, they claimed that the plaintiff's predecessor in title, Evelyn Pay Long, did not hold title individually, but rather as a trustee of the family trust. Finally, they claimed, in essence, that a transfer of title

---

[1] At trial, the plaintiff brought two separate actions. One of the actions, under docket number CV-03-0082436, was against the Levesques and Kelley. The second action, under docket number CV-03-0082537, was against St. Marie. The cases were consolidated and tried together because they involved the same claims that arose from the same factual circumstances. The court issued one memorandum of decision that pertained to both actions. The defendants in each action thereafter filed separate appeals, which we consider together.

by Long was ineffective against those claiming a right to possession through the beneficiaries of the trust. By way of counterclaim, the defendants asserted that the plaintiff wrongly was interfering with their right of occupancy and possession of the property. By way of relief, the defendants claimed trial by jury and damages in the amount of $1,788,000. The defendants later amended their counterclaims to add a second count to each alleging that they had a constitutional right to trial by jury. In those counts, they sought declaratory judgments that they had a right to trial by jury.

At trial, the plaintiff withdrew all but the third counts of the complaints, which alleged that it held title to the premises, that the defendants resided on the premises and had no right or privilege to occupy the premises, that the plaintiff properly terminated the defendants' tenancy by serving on them notices to quit possession and that despite the notices, the defendants failed to quit possession. Following a trial to the court, the court found in favor of the plaintiff on its complaints and on the defendants' counterclaims. These appeals followed.

Given the gamut of issues presented, different standards of review apply depending on the nature of the claims raised. To the extent that the defendants claim that the court made legal errors, we accord de novo review to determine whether the court's rulings were legally correct. See *Waterbury Hotel Equity, LLC* v. *Waterbury*, 85 Conn. App. 480, 493, 858 A.2d 259, cert. denied, 272 Conn. 901, 863 A.2d 696 (2004). To the extent that the defendants claim that the court made incorrect factual determinations, we review the record to determine whether the court's factual conclusions are clearly erroneous. See *Miller* v. *Westport*, 268 Conn. 207, 214, 842 A.2d 558 (2004).

The defendants first claim that the court mistakenly concluded that they are the lessees of the plaintiff.

The record belies that claim. As noted, the plaintiff proceeded only on the third counts at trial. Nowhere do those counts allege that the defendants were tenants of the plaintiff. Nor did the plaintiff need to make such an allegation. General Statutes § 47a-23 (a) provides in relevant part: "When the owner or lessor . . . desires to obtain possession or occupancy . . . and (1) when a rental agreement or lease of such property, whether in writing or by parol, terminates for any of the following reasons . . . or (2) *when such premises, or any part thereof, is occupied by one who never had a right or privilege to occupy such premises* . . . such owner or lessor . . . shall give notice to each lessee *or occupant* to quit possession or occupancy . . . ." (Emphasis added.) The statute pertaining to judgments in summary process actions contains parallel language. General Statutes § 47a-26d provides in relevant part: "If, on the trial of a summary process complaint it is found that the defendant is the lessee of the complainant and holds over after the termination of the lease or rental agreement *or, if there was no lease or rental agreement, that the defendant is the occupant of such premises and has no right or privilege to occupy the same* . . . the court shall forthwith enter judgment that the complainant recover possession or occupancy of the premises . . . ." (Emphasis added.) Thus, by the plain language of the applicable statutes, a property owner may bring a summary process action against one who has no right or privilege to occupy the premises without having to allege that the occupier is a tenant.

Although the present scope of summary process represents an expansion of its original limited purpose to enable landlords to evict tenants, our reading of § 47a-23 is not groundbreaking. In 1970, our Supreme Court stated: "It is to be noted that by subsequent amendments the scope of summary process actions has been greatly expanded beyond situations where the parties stood in

the relationship of lessor and lessee. By Public Acts 1957, No. 291, entitled 'An Act [C]oncerning Summary Process [A]gainst Unlawful Occupan[ts] of Real Property', [what is now General Statutes § 47a-23] was amended to authorize summary process where premises or any part thereof, is occupied by one who has no right or privilege to occupy said premises, or where one originally had the right or privilege to occupy said premises but such right or privilege has terminated and the owner or lessor . . . shall desire to obtain possession or occupancy of the same." (Internal quotation marks omitted.) *Southington* v. *Francis*, 159 Conn. 64, 69 n.2, 266 A.2d 387 (1970).[2]

The defendants also claim that the plaintiff failed to prove that it was in possession of the premises or that it sought possession. As noted, one seeking summary process need only allege and prove ownership of the subject property and assert a demand for possession. See General Statutes § 47a-23. We find no language in the statute, nor have the defendants brought to our attention any decisional law, that supports the novel idea that an absentee owner of property may not bring a summary process action to regain control and dominion over the property without seeking actual physical possession.

The defendants next claim that the court incorrectly found that the plaintiff was the owner of the subject premises. We begin our analysis by echoing the observation of the trial court that "[t]his relatively simple summary process action has been made unduly complicated by the efforts of counsel for the defendants and the family of Evelyn Pay Long. It is clear that the actual named defendants are not involved in this attempt, but are instead caught in the middle of a crossfire between

---

[2] General Statutes § 52-532 was transferred to General Statutes § 47a-23 in 1977.

the plaintiff in this action and the plaintiffs in a previous action, *Smith* v. *Trinity United Methodist Church of Springfield, Massachusetts*, supra, 47 Conn. Sup. 618 . . . ."[3] In *Smith*, two daughters and a grandson of Long brought an action against the plaintiff in which they alleged that the deed from Long to the plaintiff was ineffective to give the plaintiff ownership in fee of the subject premises. Id., 619. The trial court's judgment in favor of the plaintiff was affirmed in a per curiam opinion by our Supreme Court. See *Smith* v. *Trinity United Methodist Church of Springfield, Massachusetts*, 263 Conn. 135, 819 A.2d 225 (2003). As properly noted by the trial court, the *Smith* litigation established the plaintiff's ownership of the property in question. Thus, the defendants' second claim that the court incorrectly found that a "mere paper chain of title" established ownership of the subject premises in the plaintiff is entirely without merit. The plaintiff's title to the property was litigated and determined previously in *Smith*.

Next, the defendants claim that the court incorrectly precluded the testimony of two witnesses, Jacalyn Long Durfee and Gilbert Lebovitz.[4] In assessing that claim, we first note our familiar standard of review for challenges to evidentiary rulings. "It is well settled that the trial court's evidentiary rulings are entitled to great

---

[3] The defendants' claim that the court incorrectly admitted as evidence proof of that prior action requires no discussion. "There is no question that the trial court may take judicial notice of the file in another case, whether or not the other case is between the same parties." (Internal quotation marks omitted.) *Drabik* v. *East Lyme*, 234 Conn. 390, 398, 662 A.2d 118 (1995).

[4] We initially note that the defendants have not provided a copy of the transcript of the testimony of either Durfee or Lebovitz, pursuant to Practice Book § 63-8. The plaintiff has included a portion of the applicable transcript of the testimony of Durfee and the defendants' offer of proof in the appendix to its brief, but it is unclear whether we have the entire record required for the review of the issue. The plaintiff also has included a portion of the applicable transcript in the appendix to its brief, but the portion does not appear to include the entire discussion regarding the admissibility of Lebovitz's opinion.

deference. . . . The trial court is given broad latitude in ruling on the admissibility of evidence, and we will not disturb such a ruling unless it is shown that the ruling amounted to an abuse of discretion." (Internal quotation marks omitted.) *Daley* v. *McClintock*, 267 Conn. 399, 403, 838 A.2d 972 (2004).

The defendants offered the testimony of Durfee, the daughter of Long and Enneking Waldron Long. The defendants proffered that Durfee would testify as to the contents of conversations between her mother and father concerning their intentions regarding ownership of the subject premises. The court precluded that testimony because it did not fall within any known exception to the hearsay rule. We agree. It appears that the defendants at trial sought to introduce that testimony as "verbal acts" or as out-of-court statements of unavailable witnesses.[5] The defendants' reliance on the "verbal acts" doctrine is misplaced. "A verbal act is an out-of-court statement that causes certain legal consequences, or, stated differently, it is an utterance to which the law attaches duties and liabilities . . . [and] is admissible nonhearsay because it is not being offered for the truth of the facts contained therein." (Internal quotation marks omitted.) *State* v. *Perkins*, 271 Conn. 218, 255, 856 A.2d 917 (2004). Our review of the available record leads us to the firm conviction that the testimony was offered not as a verbal act, but rather as evidence of declarations purportedly made by Durfee's parents concerning their aspirations regarding the subject property. As to the defendants' more general offer of the testimony as out-of-court statements made by unavailable declarants, we are aware of no rule embodied in our

[5] On appeal, it appears that the defendants now assert that Durfee's testimony was admissible on the ground that it consisted of statements made by her parents against their civil interests pursuant to § 8-6 (3) of the Connecticut Code of Evidence. On the basis of the limited record provided, we cannot determine whether the defendants raised that claim at trial and, therefore, conclude that the record is insufficient to review the claim.

code of evidence or common law that makes admissible the hearsay statements of declarants simply because they are unavailable for trial. See generally Conn. Code Evid. § 8-1 et seq. Therefore, we conclude that the court did not abuse its discretion.

The defendants also offered the testimony of Lebovitz, an attorney. The defendants represented that Lebovitz was an expert on real estate titles and that he would offer testimony concerning the necessary factual antecedents to the establishment of either a resulting or a constructive trust. We again note that the defendants have not provided a copy of the transcript of the testimony of Lebovitz and that the portion provided in the plaintiff's appendix is not complete. See footnote 4. Our review of the record provided by the parties discloses that the court did not, in fact, preclude the testimony of Lebovitz, although it cautioned counsel that because the proffer of Lebovitz's testimony appeared to rely on facts that were not in evidence, that testimony likely would be of little use to the court. In response, the defendants appear to have abandoned efforts to have Lebovitz testify. In either case, we conclude that the record is insufficient to review the claim because we cannot review the entire colloquy between the court and the parties regarding the proffered testimony.

The defendants next claim that the court's analysis of their trust claim was flawed. Specifically, the defendants assert that the court incorrectly applied constructive trust principles to their claim of a resulting trust. In order to respond to that claim, we first examine the pleadings to determine the issues that were joined for trial. In response to the plaintiff's initial four count complaints, the defendants filed answers, special defenses and counterclaims. In their answers, the defendants alleged that "we have a lease from the owner Long Family Trust." In their special defenses, the defendants

claimed that they "have the right and privilege to occupy and possess the premises from the beneficiaries of the 1943 Long Family Trust" and that Long had held title to the property not in her individual name but as a "[t]rustee of the 1943 Long Family Trust . . . ." In the counterclaims, the defendants claimed that they had "the right and privilege to occupy and possess the premises from the beneficiaries of the 1943 Long Family Trust." A fair summary of the special defenses and counterclaims is that the defendants claimed a right to occupy the premises, that their right was derived from the beneficiaries of the 1943 trust and that the plaintiff's predecessor in title, Long, held title, not in her individual name, but as trustee of the 1943 trust.

In our assessment of the defendants' claim regarding the alleged trust, we need not determine whether the court misconstrued the alleged trust because, as the court noted, the defendants failed to offer any probative evidence at trial of the existence of any trust. To the contrary, the court noted that Long's husband, Enneking Waldron Long, quitclaimed the premises to her without restriction or limitation. The court also noted that the ownership of the property already had been the subject of litigation between the plaintiff and those in privity with the defendants and, therefore, the defendants were barred by the doctrines of collateral estoppel and res judicata from presently asserting the existence of a trust. In *Smith*, the daughters and a grandchild of Long sought a judgment that the plaintiff did not have good title to the property. See *Smith* v. *Trinity United Methodist Church of Springfield, Massachusetts*, supra, 47 Conn. Sup. 619. Contrary to the defendants' claims, the *Smith* court found that Long had conveyed good title to the plaintiff. Id., 624. Because the trial court in *Smith* observed that Long's daughters and grandson had offered no evidence to dispute the plaintiff's title to the property; id., 624; we cannot say

that the defendants in this case are collaterally estopped from now asserting a claim on the basis of the existence of a trust. "Collateral estoppel, like its cousin res judicata, presents a question of law that we review de novo. . . . Collateral estoppel, or issue preclusion, prohibits the relitigation of an issue when that issue was actually litigated and necessarily determined in a prior action. . . . For an issue to be subject to collateral estoppel, it must have been fully and fairly litigated in the first action. It also must have been actually decided and the decision must have been necessary to the judgment." (Internal quotation marks omitted.) *Waterbury Hotel Equity, LLC* v. *Waterbury*, supra, 85 Conn. App. 493.

Although the doctrine of collateral estoppel is not available to the plaintiff because the issues litigated in this action are not identical to those actually litigated in the prior action, the defendants are barred, by the doctrine of res judicata, from litigating that issue because the plaintiffs in *Smith* raised the issue and had a full opportunity to litigate it therein. The doctrines of collateral estoppel and res judicata are close cousins, but they are not alternate expressions of the same. Although collateral estoppel operates to bar the reassertion of an issue already fully litigated, res judicata precludes one from raising causes of action, facts or issues that either already were adjudicated or could have been litigated fully in a prior action between the same parties or those in privity with them. "The doctrine of res judicata holds that an existing final judgment rendered upon the merits without fraud or collusion, by a court of competent jurisdiction, is conclusive of causes of action and of facts or issues thereby litigated as to the parties . . . in all other actions in the same or any other judicial tribunal of concurrent jurisdiction. . . . If the same cause of action is again sued on, the judgment is a bar with respect to any claims relating to the cause of action which were actually made or *which might have been*

*made."* (Emphasis added; internal quotation marks omitted.) *Fish* v. *Igoe*, 83 Conn. App. 398, 403, 849 A.2d 910, cert. denied, 271 Conn. 921, 859 A.2d 577 (2004). "To determine whether two claims are the same for purposes of res judicata, we compare the pleadings and judgment in the first action with the complaint in the subsequent action. . . . The judicial [doctrine] of res judicata . . . [is] based on the public policy that a party should not be able to relitigate a matter which it already has had an opportunity to litigate. . . . [W]here a party has fully and fairly litigated his claims, he may be barred from future actions on matters not raised in the prior proceeding." (Citation omitted; internal quotation marks omitted.) *Thorpe* v. *Commissioner of Correction*, 73 Conn. App. 773, 777, 809 A.2d 1126 (2002).

In *Smith*, the daughters and grandson of Long attacked the plaintiff's ownership of the land by claiming, inter alia, that Long, the grantor, had owned the property in trust and therefore could not transfer a fee interest to the plaintiff. We take judicial notice[6] of the complaint in *Smith*, in which the defendants sought "[i]mposition of a resulting and/or constructive trust on any interest obtained by [Trinity United Methodist Church] of said document recorded in volume 326, page 324, and an order to transfer any such interest to the plaintiffs as their interests may appear." Ultimately, the trial court decided the case on its merits and concluded that the plaintiff had a valid fee interest in the land transferred from Long. See *Smith* v. *Trinity United Methodist Church of Springfield, Massachusetts*, supra, 47 Conn. Sup. 624. Because the daughters and grandson of Long claimed an interest in the property through the existence of the 1943 trust in the *Smith* litigation and because the claim of the current defendants is derived from the decedents of Long, the defendants are now precluded by the doctrine of res judicata

---

[6] See footnote 3.

from asserting the trust claim because the plaintiffs in *Smith* had a full and fair opportunity to litigate their trust claim.

The defendants finally claim that the court incorrectly denied them a trial by jury. General Statutes § 52-215 provides that there shall be no right to a jury trial in a summary process case. We note, however, that in the defendants' counterclaims, they alleged that the plaintiff wrongly had deprived them of their right and privilege to occupy and to possess the premises, for which they sought damages, and we note that the defendants had filed a jury claim during the pleading stage of the proceedings. "When legal and equitable issues are combined in a single action, whether the right to a jury trial attaches depends upon the relative importance of the two types of claims. Where incidental issues of fact are presented in an action essentially equitable, the court may determine them without a jury in the exercise of its equitable powers. . . . Where, however, the essential basis of the action is such that the issues presented would be properly cognizable in an action of law, either party has a right to have the legal issues tried to the jury, even though *equitable relief is asked in order to give full effect to the legal rights claimed . . . .* Because a counterclaim is an independent action . . . the question presented is whether the defendants' counterclaim is essentially legal or essentially equitable. . . . This analysis must be performed in the context of the pleadings when read as a whole. . . . The form of the relief demanded is not dispositive." (Citations omitted; emphasis added; internal quotation marks omitted.) *Northeast Savings, F.A.* v. *Plymouth Commons Realty Corp.*, 229 Conn. 634, 641–42, 642 A.2d 1194 (1994).

Because the defendants sought damages in their counterclaims for the alleged negligent behavior of the plaintiff in interfering with their claimed right of posses-

sion and occupancy of the premises, they facially were entitled to a jury trial because the relief they sought essentially was legal. Our conclusion that the defendants' counterclaims presented an issue at law, however, does not resolve the issue. From our review of the record, it does not appear that the defendants' jury claim was stricken from the record. Rather, it appears that the court commenced trial on the plaintiff's summary process claim at the conclusion of which it determined that the defendants had no legal right to occupy or to possess the property. Because the defendants' claim for damages was premised on their legal right to occupy and to possess the property, and because that premise was rejected by the court, the defendants' claim for damages could not have been submitted to a jury. In sum, the record does not disclose that the defendants were denied the right to a jury trial on their counterclaims. Rather, it appears that the court conducted a trial on the plaintiff's summary process complaints in which it determined that the defendants had no legal right to occupy or to possess the premises. Because the court's legal conclusion effectively foreclosed the possibility that the defendants' claim for damages could have been submitted to a jury, the defendants were not wrongly deprived of a jury trial.

The judgments are affirmed.

In this opinion the other judges concurred.