******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

SUCCESS, INC. *v.* GUS CURCIO, JR., ET AL.
(AC 36458)

Sheldon, Keller and Norcott, Js.

*Argued May 20—officially released September 29, 2015*

(Appeal from Superior Court, judicial district of
Fairfield, Housing Session, Rodriguez, J.)

*Barbara M. Schellenberg*, with whom, on the brief,
was *Vincent M. Marino*, for the appellants (named
defendant et al.).

*Jonathan J. Klein*, with whom, on the brief, were
*Sharon L. Levy* and *John R. Bryk*, for the appellee
(plaintiff).

*Opinion*

KELLER, J. In this summary process action, the defendants Gus Curcio, Jr., and Theresa Smyers[1] appeal following the trial court's denial of their motion to dismiss for lack of subject matter jurisdiction and the rendering of judgment of immediate possession of premises located in Stratford in favor of the plaintiff, Success, Inc. The defendants claim that the court erred in: (1) denying their motion to dismiss and finding that the plaintiff had standing as the legal owner of the property to pursue its summary process action, (2) improperly rendering judgment of immediate possession in favor of the plaintiff because Curcio, Jr., is the beneficial owner of the property, and (3) improperly failing to impose a constructive trust in favor of the defendants. We agree with the defendants that the plaintiff failed to sufficiently prove legal ownership of the premises and, as a result, lacked standing to initiate the summary process action. Accordingly, we reverse the judgment of the court and remand this case with direction to dismiss the plaintiff's action.[2]

The following facts and procedural history are relevant to this appeal. The subject premises in Stratford have been the home of Curcio, Jr., since 1995. At the time this action was commenced, he resided there with his girlfriend, Smyers, and five children. The plaintiff served a notice to quit on the defendants on August 25, 2012, and filed a three count complaint on September 27, 2012. The defendants filed an answer and nine special defenses on October 4, 2012, to which the plaintiff replied on October 10, 2012, leaving the defendants to their proof.[3] The plaintiff subsequently amended the first count of its complaint on March 12, 2014. The first count of the amended complaint alleges that on or about April 1, 2012, the plaintiff and the defendants "entered into an oral month-to-month lease, which was renewed on consecutive months thereafter, for use and occupancy of premises" in Stratford. It further alleges that "the plaintiff and defendant[s] never had an agreement as to monetary compensation for the premises" and that "[a]lthough said defendants previously had a right or privilege to occupy the premises, said right or privilege has terminated." The second count alleges that "[t]he monthly tenancy expires on the LAST day of each consecutive month and has terminated by lapse of time." (Emphasis omitted.) The third count alleges that the defendants "commenced occupancy of the premises [o]n or about January 1, 2007," and "never had a right or privilege to occupy the premises."[4]

On May 13, 2013, the defendants filed a motion to dismiss, claiming that the court lacked subject matter jurisdiction because Curcio, Jr., as the beneficial owner of the property and the sole shareholder of a Connecticut corporation, JD's Café, I Inc. (JD's Café), which obtained title to the premises on July 19, 2007, never

authorized any subsequent transfer of the premises.[5] The defendants argued, therefore, that the plaintiff lacked standing to initiate its summary process action because it was not the owner of the premises at the time it served the defendants with the requisite notice to quit or at the time it filed its complaint, and that no landlord-tenant relationship ever existed between the parties. At the beginning of trial on October 18, 2013, with the agreement of the parties, the court reserved judgment on the motion to dismiss because the claims asserted in the motion would require the same evidence as the evidence admitted during trial.

On January 13, 2014, the court issued its decision from the bench, denying the motion to dismiss and ordering judgment of immediate possession in favor of the plaintiff. Subsequently, the court, *Rodriguez, J.*, issued an articulation of its decision.[6]

In rendering its decision, the court found the following facts. Curcio, Jr., resided in the premises since approximately 1995 and, at that time, he acquired title to them. Subsequently, he conveyed title to the premises and, at the time of this action, no longer owned the premises, although he remained in possession of them with Smyers. On March 26, 2012, after other conveyances had already occurred affecting the title to the premises, the plaintiff received title from Cummings Enterprises, Inc., which was recorded on the Stratford land records on April 2, 2012. Since the date of that conveyance, the plaintiff has been and remains the holder of title to the premises. The plaintiff is a limited liability company, and Gus Curcio, Sr., is its president.[7] The plaintiff, as owner of the premises, caused a notice to quit to be served upon the defendants on or about August 25, 2012, which called upon them to vacate the premises by August 31, 2012. The defendants remained in possession of the premises at all relevant times since being served with the notice to quit and are the only adult occupants of the premises.

In denying the defendants' motion to dismiss, the court concluded that the claim of Curcio, Jr., that he, and not the plaintiff, was the owner of the premises, was unfounded and that the notice to quit was not defective. The court then concluded that the plaintiff did not prove the allegations set forth in counts two and three of its complaint, as amended, and rendered judgment in favor of the defendants on those two counts. The court also concluded that there was insufficient evidence to prove the allegations contained in the defendants' special defenses, and determined that the fourth special defense, estoppel, and the eighth special defense, the plaintiff's lack of ownership and the lack of any tenancy, were "moot."

The court rendered judgment in favor of the plaintiff on the first count of the amended complaint. It found that the plaintiff was the owner of the premises and

that the defendants originally had a right or privilege to occupy the premises but that such right or privilege was terminated, that the plaintiff caused a proper notice to quit possession to be served upon the defendants to vacate the premises on or before the date specified in the notice to quit, and that, although the time given to the defendants to vacate had expired, the defendants remained in possession of the premises. The court indicated that, in making its decision, it also "considered the history and nature of the relationship by and between the plaintiff's president, Curcio, Sr., and the defendants, including equitable as well as legal considerations."[8] The court rendered judgment of immediate possession on the first count and ordered a stay until July 1, 2014. On February 19, 2014, the court granted the defendants' motion for use and occupancy in lieu of bond, ordering payment of $2000 per month. This appeal followed. Additional facts will be set forth as necessary.

The defendants' first claim, which is that the court erred in not dismissing this action because the plaintiff failed to meet its burden of proving that it owned the premises and, therefore, lacked standing to pursue this summary process action, is dispositive of this appeal. In support of their claim, the defendants argue that the court improperly relied on two quitclaim deeds that had been recorded in the Stratford land records, certified copies of which were admitted into evidence. After a thorough review of the testimony and documentary exhibits, we conclude that the court's finding that the plaintiff was the owner of the premises at the time it initiated its summary process action in 2012 is not supported by a fair preponderance of the evidence.

"Summary process is a special statutory procedure designed to provide an expeditious remedy. . . . It enable[s] landlords to obtain possession of leased premises without suffering the delay, loss and expense to which, under the common-law actions, they might be subjected by tenants wrongfully holding over their terms. . . . Summary process statutes secure a prompt hearing and final determination. . . . Therefore, the statutes relating to summary process must be narrowly construed and strictly followed." (Internal quotation marks omitted.) *Getty Properties Corp.* v. *ATKR, LLC*, 315 Conn. 387, 405–406, 107 A.3d 931 (2015).

In a summary process action based on the plaintiff's claim that the defendant originally had the right or privilege to occupy the premises but that any such right or privilege has terminated, the plaintiff must prove, by a fair preponderance of the evidence, all the elements of the case. The essential elements are: (1) the plaintiff is the owner of the property; (2) the defendant originally had a right or privilege to occupy the premises but such right or privilege has terminated; (3) the plaintiff caused a proper notice to quit possession to be served on the

defendant to vacate the premises on or before a certain date; and (4) although the time given the defendant to vacate in the notice to quit possession has passed, the defendant remains in possession of the premises. See General Statutes § 47a-23 (a) (3).[9]

As a threshold issue, in order to prevail, the plaintiff must prove the essential element of ownership of the premises, which implicates standing. "It is well established that [a] party must have standing to assert a claim in order for the court to have subject matter jurisdiction . . . . Standing is the legal right to set judicial machinery in motion. One cannot rightfully invoke the jurisdiction of the court unless he . . . has, in an individual or representative capacity, some real interest in the cause of action, or a legal or equitable right, title or interest in the subject matter of the controversy." (Internal quotation marks omitted.) *Countrywide Home Loans Service, LP* v. *Creed*, 145 Conn. App. 38, 50–51, 75 A.3d 38, cert. denied, 310 Conn. 936, 79 A.3d 889 (2013). "When standing is put in issue, the question is whether the person whose standing is challenged is a proper party to request an adjudication of the issue . . . ." (Internal quotation marks omitted.) *AvalonBay Communities, Inc.* v. *Orange*, 256 Conn. 557, 568, 775 A.2d 284 (2001).

Section 47a-23 (a) provides in relevant part: "When the owner . . . desires to obtain possession or occupancy of any land . . . and . . . (3) when one originally had the right or privilege to occupy such premises but such right or privilege has terminated . . . such owner . . . shall give notice to each . . . occupant to quit possession or occupancy of such land . . . before the time specified in the notice for the lessee or occupant to quit possession or occupancy." General Statutes § 47a-1 (e) defines "owner" as "one or more persons, jointly or severally, in whom is vested (1) all or part of the legal title to property, or (2) all or part of the beneficial ownership and a right to present use and enjoyment of the premises and includes a mortgagee in possession." "Vested" is defined as "[h]aving become a completed, consummated right for present or future enjoyment; not contingent; unconditional; absolute." Black's Law Dictionary (9th Ed. 2009) p. 1699.

Where a plaintiff issuing a notice to quit is not the owner of the property when the notice to quit is served, the notice to quit is defective, which deprives the court of subject matter jurisdiction. "Before the [trial] court can entertain a summary process action and evict a tenant, the owner of the land must previously have served the tenant with notice to quit. . . . As a condition precedent to a summary process action, proper notice to quit [pursuant to § 47a-23] is a jurisdictional necessity." (Internal quotation marks omitted.) *Bayer* v. *Showmotion, Inc.*, 292 Conn. 381, 388, 973 A.2d 1229 (2009).

"A motion to dismiss . . . properly attacks the jurisdiction of the court, essentially asserting that the plaintiff cannot as a matter of law and fact state a cause of action that should be heard by the court." (Internal quotation marks omitted.) *Caruso* v. *Bridgeport*, 285 Conn. 618, 627, 941 A.2d 266 (2008). "Any claim of lack of jurisdiction over the subject matter cannot be waived; and whenever it is found after suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the judicial authority shall dismiss the action." Practice Book § 10-33.

If a party is found to lack standing, the court is without subject matter jurisdiction to hear the case. Because standing implicates the court's subject matter jurisdiction, the plaintiff ultimately bears the burden of establishing standing. A trial court's determination of whether a plaintiff lacks standing is a conclusion of law that is subject to plenary review on appeal. "We conduct that plenary review, however, in light of the trial court's findings of fact, which we will not overturn unless they are clearly erroneous." (Internal quotation marks omitted.) *Manning* v. *Feltman*, 149 Conn. App. 224, 232, 91 A.3d 466 (2014). "In undertaking this review, we are mindful of the well established notion that, in determining whether a court has subject matter jurisdiction, every presumption favoring jurisdiction should be indulged." (Internal quotation marks omitted.) *Dayner* v. *Archdiocese of Hartford*, 301 Conn. 759, 774, 23 A.3d 1192 (2011). "This involves a two part function: where the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct and whether they find support in the facts set out in the memorandum of decision; where the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous." (Internal quotation marks omitted.) *Bargain Mart, Inc.* v. *Lipkis*, 212 Conn. 120, 129–30, 561 A.2d 1365 (1989); see Practice Book § 60-5. "A court's determination is clearly erroneous only in cases in which the record contains no evidence to support it, or in cases in which there is evidence, but the reviewing court is left with the definite and firm conviction that a mistake has been made." (Internal quotation marks omitted.) *Orange Palladium LLC* v. *Readey*, 144 Conn. App. 283, 291–92, 72 A.3d 1191 (2013).

The following undisputed evidence is relevant to this claim. JD's Café acquired the premises on July 19, 2007, from Judith Curcio, the former wife of Curcio, Sr., and the mother of Curcio, Jr.[10] On August 22, 2011, Robin Cummings, acting as president of JD's Café, signed a quitclaim deed purportedly conveying the premises to Cummings Enterprises, Inc. (Cummings Enterprises),

for one dollar and other valuable consideration. On March 26, 2012, Cummings Enterprises, acting through its president, Julia Krish, the present wife of Curcio, Sr., purportedly conveyed the premises to the plaintiff corporation, for one dollar and other valuable consideration. The defendants claim that at the time Cummings Enterprises acquired the premises, Curcio, Jr., as the sole shareholder of JD's Café, was the only person with authority to transfer any of its corporate assets, and that the evidence did not establish that he legally transferred ownership and control of that corporation to Curcio, Sr., or that he, as the sole shareholder, ever consented to the conveyance of the premises from JD's Café to Cummings Enterprises.[11] As a result, the defendants contend that the two transactions involving Cummings Enterprises were void and that JD's Café remains the owner of the premises. The plaintiff claims that the evidence is overwhelming that Curcio, Jr., transferred his interest in JD's Café to Curcio, Sr., in 2007. The plaintiff asserts, and the court found, that it had record ownership of the premises, having received title from Cummings Enterprises on March 26, 2012, for one dollar and other valuable consideration, after other conveyances already had occurred that divested Curcio, Jr., of any ownership interest, by virtue of a quitclaim deed recorded in the Stratford land records on April 4, 2012.

The evidence, including the testimony of Curcio, Jr., and Curcio, Sr., demonstrated that Curcio, Jr., acquired title to the premises on June 15, 1995. Additional evidence, including the testimony of Judith Curcio, demonstrated that, in July, 2007, the premises were conveyed to Judith Curcio, who testified that the premises were conveyed to her for "one day or less," as arranged by Curcio, Sr., "to protect my son and to continue him still having ownership of the property and being able to live there without problems that were occurring with [the defendant's friend, Alvaro Albuquerque]." On July 19, 2007, the premises were conveyed from Judith Curcio to JD's Café by a quitclaim deed recorded on July 20, 2007. On August 22, 2011, JD's Café purportedly conveyed the premises to Cummings Enterprises for $1 and other valuable consideration. This quitclaim deed was signed by Cummings as president of JD's Café. On March 26, 2012, Cummings Enterprises purportedly conveyed the premises to the plaintiff for $1 and other valuable consideration. This deed was signed by Julia Krish as president of Cummings Enterprises.

The defendants claim that documentary evidence introduced at trial demonstrated that the first corporate transaction in the chain of title leading to the plaintiff's purported ownership of the premises, the execution by Cummings of a quitclaim deed of the premises from JD's Café to Cummings Enterprises, was not a proper exercise of the corporation's authority to conduct business under the Connecticut Business Corporation Act (CBCA), General Statutes § 33-600 et seq., which pro-

vides in relevant part, "[a]ll corporate powers shall be exercised by or under the authority of, and the business and affairs of the corporation managed by or under the direction of, its board of directors, subject to any limitation set forth in the certificate of incorporation or in an agreement authorized under section 33-717." General Statutes § 33-735 (b).

Portions of the relevant corporate records of J.D.'s Café were introduced into evidence by the defendants. Curcio, Jr., further testified that he was the custodian of corporate records pertaining to JD's Café, having received the records from an attorney one month prior to the trial.[12] According to the defendants, this documentary evidence, including JD Café's minute and certificate book and stock ledger, demonstrated that JD's Café was incorporated on June 23, 2004, and 100 shares of stock were issued to Joseph Hajducky.[13] The evidence reflects that, as sole shareholder, Hajducky also approved his appointment as the sole director of the corporation and as its president, secretary, and treasurer. At the first meeting of the shareholders, Hajducky approved and adopted the corporate bylaws.

As evidenced by a document dated August 25, 2004, Hajducky, as president of the corporation, transferred all 100 shares of corporate stock to Curcio, Jr., by means of a certificated security endorsed to Curcio, Jr., which had no subsequent endorsements to anyone else, even though an endorsement would have been required to effectuate a stock transfer pursuant to article V, § 3, of the corporate bylaws.[14] At a documented shareholder meeting on November 11, 2005, Curcio, Jr., became the president and director of JD's Café and there was no indication from the corporate books or any other documentary evidence that Hajducky held those positions subsequent to that date. Further documentation reflects that on November 11, 2005, Curcio, Jr., acting as sole shareholder, consented to making himself director, president, treasurer, and secretary of the corporation.

The certificate of incorporation of JD's Café was not introduced into evidence, but the corporation's bylaws were admitted as a full exhibit. The plaintiff did not question the validity of JD's Café's incorporation, and in fact offered the deposition testimony of JD Café's first president and sole shareholder, Hajducky, as to its formation at the behest of Curcio, Jr., in 2004. The evidence reflected that, during his deposition testimony, Hajducky indicated that he, as incorporator, had signed an exhibit marked for identification, which the plaintiff's counsel represented to be the certificate of incorporation of JD's Café. At trial, the plaintiff did not claim that the bylaws were inconsistent with the law or the certificate of incorporation.[15]

In the bylaws of JD's Café, under article III, § 1, "Number, Election and Term of Office" of the board of directors, the number of directors of the corporation is one,

unless and until otherwise determined by vote of a majority of the entire board of directors, if all of the outstanding shares are owned beneficially and of record by less than three shareholders. Article III, § 2, "Duties and Powers" of the board of directors, provides that "the Board of Directors shall be responsible for the control and management of the affairs, property and interests of the Corporation, and may exercise all powers of the Corporation, except as are in the Certificate of Incorporation or by statute expressly conferred upon or reserved to the shareholders." Pursuant to article II, § 6 (a), "any corporate action, other than the election of directors to be taken by vote of the shareholders, shall be authorized by a majority of votes cast at a meeting of shareholders by the holders of shares entitled to vote thereon."

This last provision is significant because it sets forth, in the bylaws, that a "shareholder agreement" is as it is defined in General Statutes § 33-717, which provides in relevant part: "(a) An agreement among the shareholders of a corporation that complies with this section is effective among the shareholders and the corporation even though it is inconsistent with one or more other provisions of sections 33-600 to 33-998, inclusive, in that it: (1) Eliminates the board of directors or restricts the discretion or powers of the board of directors. . . .

"(b) An agreement authorized by this section shall be: (1) Set forth (A) in the certificate of incorporation or bylaws and approved by all persons who are shareholders at the time of the agreement or (B) in a written agreement that is signed by all persons who are shareholders at the time of the agreement and is made known to the corporation; (2) subject to amendment only by all persons who are shareholders at the time of the amendment, unless the agreement provides otherwise; and (3) valid for ten years, unless the agreement provides otherwise."

The record reflects that, at the annual meeting of the shareholders on November 11, 2005, it also was resolved, through a shareholder agreement signed by Curcio, Jr., that "there could not be a sale or transfer of any assets without the express written consent of the Shareholder(s)." The evidence reflects that the purported transfer of the subject premises on which the plaintiff relies occurred in 2011, during the ten year period that the applicable provisions of the shareholder agreement remained valid pursuant to § 33-717 (b) (3).

The defendants claim that, consistent with the documentary evidence presented, Curcio, Jr., testified that he was still the sole shareholder of JD's Café in August, 2011, that he received no consideration for the transfer of the premises from JD's Café to Cummings Enterprises, and that although the bylaw provisions and the November 11, 2005 shareholder agreement of JD's Café require either a vote of the shareholders at a share-

holder meeting or the express written consent of the shareholders to authorize such a conveyance, there was no evidence of either occurrence. Curcio, Jr., testified that he did not delegate any authority to Cummings to convey the premises to Cummings Enterprises on behalf of JD's Café.

The plaintiff argues that Curcio, Jr.'s claim that he remained the sole shareholder of JD's Café on August 23, 2011 is "palpably false" and was unsupported by any credible evidence.[16] The defendants, however, emphasize that the testimony of Curcio, Sr., with respect to the purported transaction transferring title from JD's Café to Cummings Enterprises did not contradict the testimony of Curcio, Jr. Curcio, Sr., claimed that Curcio, Jr., "gave" the *premises* to him. He described his perception of the transfer of the premises to him by Curcio, Jr., in the following manner: "In 2007, my son had thrown up his hands; he was walking away from the property, I was willing to take it back, he gave it to me, asked me if he could stay—said he was moving out and finding another place to live, asked me if I would let him stay for six months until he found another place, and I said yes. And there was never any requirement for him to pay rent. . . . He gave [the property] to an entity that he previously owned . . . . That was JD's Café, Inc., and I put Robin Cummings on as president to own it for me. . . . I was the beneficial owner [of JD's Café, I, Inc.]."[17] Moreover, Curcio, Sr., acknowledged during his testimony that when he designated and authorized Cummings to transfer the premises from JD's Café to Cummings Enterprises in August, 2011, he was unaware of any document showing an assignment or transfer of any of the stock by Curcio, Jr., after August 25, 2004, to either Cummings or himself.[18]

Moreover, there was no evidence presented at trial that any of the 100 issued shares of JD's Café were delivered, as that term is defined by § 42a-8-301, to Curcio, Sr., or to Cummings.[19] Curcio, Sr., testified that he never possessed the shares and there was no evidence that Cummings ever possessed them.[20] There was no evidence that the shares were held by a securities intermediary, another person such as an attorney or escrow agent on behalf of either Curcio, Sr., or Cummings. To the contrary, evidence introduced by the defendants at trial clearly showed the stock certificate for the 100 corporate shares endorsed only to Curcio, Jr., with no further endorsement to anyone else. There was no documentation that supports Curcio, Sr.'s contention that, despite having never possessed the shares himself and the absence of any endorsement of the shares over to him, he had the authority, on behalf of JD's Café, to designate Cummings as president, sole shareholder and legal owner of the corporation. Curcio, Sr., also acknowledged in his testimony that there was no document showing written consent by any shareholder approving the conveyance of the premises from

JD's Café to Cummings Enterprises.[21]

The testimony of Curcio, Sr., at best, reflects an understanding with Curcio, Jr., that the ownership of the premises would be transferred from son to father, but this expressed intention, which Curcio, Jr., denied, was never consummated by any proven act, legal or ultra vires, on the part of Curcio, Jr., acting individually or in any of his corporate capacities as sole shareholder, director or officer of JD's Café. Thus, the record reflects merely that, on the basis of a conversation with his son, Curcio, Sr., began instructing Cummings to effectuate transactions on behalf of JD's Café without any validly conferred authority. Although Curcio, Sr., went on to testify that he "later had [the premises] transferred into [the plaintiff corporation, Success, Inc.]," he did not set forth the authority under which he accomplished that transfer.

We agree with the defendants that the documentary evidence and testimony of both Curcio, Jr., and Curcio, Sr., failed to establish that anyone other than Curcio, Jr., was the sole shareholder of JD's Café in August, 2011. Curcio, Jr., testified that he, as sole shareholder, never gave authority to anyone to act on behalf of JD's Café to convey the premises to Cummings Enterprises. Therefore, absent proof of additional documentation, only Curcio, Jr., had the authority in 2011 to initiate a transfer of the premises from JD's Café to Cummings Enterprises. At the time of that first transfer, Curcio, Jr., remained the sole shareholder, and even if he had intended to accomplish it, as testified to by Curcio, Sr., and Hajducky, there was no evidence that he took any appropriate, or even inappropriate, action to effectuate such an intent. To conclude that he did so is sheer speculation.[22] There was no evidence establishing that anyone connected to JD's Café ever acted in any manner that can be considered legally sufficient to transfer all of its stock to Curcio, Sr., to appoint either Curcio, Sr., or Cummings as directors or officers, or to transfer the premises to Cummings Enterprises.

The fact that this purported conveyance took place without properly documented shareholder authority, as required by JD Café's corporate bylaws and its resolution of November 11, 2005, necessarily renders the first transfer of the premises from JD's Café to Cummings, as well as the second transfer from Cummings to the plaintiff, void. See *Stowe* v. *Wyse*, 7 Conn. 214, 219 (1828) (unless corporate agent is estopped from disputing authority because he has admitted authority by his own deed, deed executed and delivered by agent on behalf of corporate principal without authority is void.) In view of the fact that the two purported transfers of the premises were secured at the behest of Curcio, Sr., who was derelict in failing to require proper corporate authorization to effectuate them, the conveyances are void. See *Hollywyle Assn., Inc.* v. *Hollister*, 164 Conn.

389, 402, 324 A.2d 247 (1973) (corporate secretary's conveyance of right-of-way without authority or ratification by corporation was null and void); see also *Basak* v. *Damutz*, 105 Conn. 378, 383–84, 135 A. 453 (1926) (one who permits record title of his real estate to stand in name of another not thereafter estopped from asserting his ownership against creditors unless such creditors had been deceived by owner's act, had relied on apparent title, and had acted in good faith to ascertain ownership of property at issue).

The plaintiff counters the defendants' argument as to lack of proof of ownership on the part of the plaintiff by asserting that the defendants should have taken an alternate route to demonstrate the basis of their defense, such as instituting a quiet title action.[23] This argument ignores the plaintiff's burden to prove standing by a fair preponderance of the evidence. In a summary process action, the plaintiff must allege and prove ownership of the subject premises. See General Statutes § 47a-23; *Trinity United Methodist Church of Springfield, Massachusetts* v. *Levesque*, supra, 88 Conn. App. 666.

The plaintiff also relies on cases that hold that one searching title to land is bound by only such facts as appear in the chain of title to the particular property in question. See *Powers* v. *Olson*, 252 Conn. 98, 108, 742 A.2d 799 (2000); *Kulmacz* v. *Milas*, 108 Conn. 538, 542, 144 A. 32 (1928); *Goldberg* v. *Parker*, 87 Conn. 99, 108, 87 A. 555 (1913); *Wheeler* v. *Young*, 76 Conn. 44, 51, 55 A. 670 (1903); *Lee* v. *Duncan*, 88 Conn. App. 319, 327, 870 A.2d 1, cert. denied, 274 Conn. 902, 876 A.2d 12 (2005). Those cases involve the proposition that *innocent third parties* who rely upon the land records are entitled to the special protection afforded to everyone who trusts the record. They do not afford protection to purported titleholders who are aware that the conveyances they themselves have undertaken and recorded are legally insufficient. Whatever equities may accrue to an innocent purchaser who relies on the recordation of a deed which induces a mistaken reliance, the plaintiff and its corporate predecessor in title, Cummings Enterprises, both under the direction of Curcio, Sr., were bound to exercise due diligence in ensuring that individuals involved in the management of their closely held, family connected corporations acted in compliance with the law and other instruments regulating corporate activities. "The specter thus created by the [plaintiff] vanishes in light of a distinction which we cannot overlook. Here, there is no question of reliance placed on the land records by one who is a stranger to a spurious conveyance. . . . Whatever equities may accrue to an innocent purchaser who relies on the recordation of deeds cannot avail [the plaintiff]." *Hollywyle Assn., Inc.* v. *Hollister*, supra, 164 Conn. 394–95.

The plaintiff additionally appears to argue that the

deed from JD's Café to Cummings Enterprises is valid because Curcio, Sr., was clothed with apparent authority on the basis of Curcio, Jr.'s alleged statements to him and Hajducky that he wanted to divest himself of the ownership of the premises. Curcio, Sr.'s subsequent conduct, however, in light of the circumstances known to him, including that fact that he never acquired possession of any stock in JD's Café, the fact that he knew title to the premises was in JD's Café and not vested in Curcio, Jr., and the fact that Curcio, Jr., took no action on behalf of the corporation to transfer ownership of any of the stock or of the premises to his father, perpetuated Cummings' mistaken belief that he had the requisite authority to convey title to the premises, a belief Curcio, Sr., knowingly and recklessly permitted Cummings to engender.

"One-person corporations are authorized by law and should not lightly be labeled sham." *Nelson* v. *Adams USA, Inc.*, 529 U.S. 460, 471, 120 S. Ct. 1579, 146 L. Ed. 2d 530 (2000). "[T]raditionally, the law has viewed each corporation as a separate legal entity, with separate rights and obligations. For legal purposes, a bright line of distinction was drawn between the corporation and its shareholders." (Internal quotation marks omitted.) *Roy* v. *Bachman*, 121 Conn. App. 220, 228 n.8, 994 A.2d 676 (2010). A corporation's articles of organization and bylaws, together with state corporation law, regulate the manner in which a company's officers and directors must conduct the company's business. In order to pass the title of the corporation, the conveyance must appear to be the act of the corporation and the validity of the transfer must be determined at the time of the transfer. 19 C.J.S. 265, Corporations § 745 (2007). Even a person who becomes the owner of all the capital stock of a corporation does not become the legal owner of its property, and title to the property remains in the corporation. *Boise Cascade Corp.* v. *Wheeler*, 419 F. Supp. 98, 101–102 (S.D.N.Y. 1976), aff'd, 556 F.2d 554 (2d Cir. 1977). The stockholder may not ignore the existence of the corporation and convey, encumber or deal with its property in his or her own name without the action of the corporation. "A corporation is a separate legal entity, separate and apart from its stockholders. . . . It is an elementary principle of corporate law that a corporation and its stockholders are separate entities and that . . . corporate property is vested in the corporation and *not* in the owner of the corporate stock." (Emphasis in original; internal quotation marks omitted.) *Litchfield Asset Management Corp.* v. *Howell*, 70 Conn. App. 133, 147, 799 A.2d 298, cert. denied, 261 Conn. 911, 806 A.2d 49 (2002).[24]

The plaintiff, a corporation admittedly controlled by Curcio, Sr., offered no evidence as to any conduct on the part of the JD's Cafe *corporation* conferring authority on Curcio, Sr., or Cummings to act on its behalf. In view of the duty of inquiry placed on a party dealing

with a known agent to ascertain whether that agent is acting within the scope of his authority, the plaintiff's reliance on Curcio, Sr.'s testimony that he became, in some undisclosed manner, the beneficial owner of JD's Café and thus entitled to designate Cummings as sole shareholder and president of the corporation was not justified. See *Quint* v. *O'Connell*, 89 Conn. 353, 357–58, 94 A. 288 (1915). Absent a showing that any acts or conduct on the part of the corporation caused or allowed the plaintiff to believe that the actions of Curcio, Sr., and Cummings were duly authorized, any argument based on apparent authority cannot succeed. See id., 397.

"A mere paper chain of title does not establish ownership in one unless his possession or that of his predecessors in title is shown, though title satisfactorily established may draw with it possession *in the absence of any evidence to the contrary*." (Emphasis added; internal quotation marks omitted.) *Lowenberg* v. *Wallace*, 147 Conn. 689, 694, 166 A.2d 150 (1960). "[A] defendant may, if he chooses, put in issue whether the plaintiff has, within the purview of the allegations of the complaint, title to, or an interest in, the property sufficient to enable him to maintain the action." Id., 693; Practice Book § 10-50. The defendants, despite the record title of the plaintiff, had the right to contest the validity of the plaintiff's record title due to the alleged flaws in the manner in which the purported corporate conveyances were accomplished in order to show that the plaintiff never obtained proper legal ownership of the premises. Although the court permitted the defendants to introduce evidence disputing the plaintiff's claim of ownership, it found that title as reflected in the land records was sufficient to prove ownership despite the undisputed evidence that the corporate conveyances of the premises were invalid. The documentary evidence and the testimony of the witnesses, however, when reviewed in their entirety, demonstrate that the parties were engaged in intrafamilial business dealings which involved loosely documented, or completely undocumented, corporate transactions, including real estate transfers, for reasons such as the protection of assets from potential creditors.[25] Despite the fact that during the years in question, both Curcio, Sr., and Curcio, Jr., were involved in the creation of numerous corporate entities and had access to legal counsel, it appears that they and their business associates acted on a misguided trust and, at times, disregarded legal formalities, a situation we do not countenance.[26] After a thorough review of the record, we are left with a definite and firm conviction that in the face of the documentary and testimonial evidence to the contrary, the court's factual finding that the conveyances on the land records sufficiently demonstrated valid title in the plaintiff was clearly erroneous, and its legal conclusion that the plaintiff was the legal owner of

the premises on the basis of record title was incorrect.

"The general burden of proof in civil actions is on the plaintiff, who must prove all the essential allegations of the complaint." *Gulyca* v. *Stop & Shop Cos.*, 29 Conn. App. 519, 523, 615 A.2d 1087, cert. denied, 224 Conn. 923, 618 A.2d 527 (1992). The failure of the plaintiff to prove valid legal ownership of the premises, an essential element in this summary process action, deprived it of standing. Therefore, the court should have dismissed this action for lack of subject matter jurisdiction rather than rendering judgment of immediate possession in favor of the plaintiff.

The judgment is reversed and the case is remanded with direction to grant the motion to dismiss the plaintiff's summary process action for lack of subject matter jurisdiction and to render judgment thereon.

In this opinion the other judges concurred.

[1] For reasons not ascertainable from the record, there are two anonymous defendants, John Doe and Jane Doe, who are not parties to this appeal. We will refer to Gus Curcio, Jr., and Smyers as the defendants. Where necessary, we refer to Gus Curcio, Jr., individually, as Curcio, Jr., and to Smyers, individually, as Smyers.

[2] Because our decision on the defendants' first issue, lack of subject matter jurisdiction, is dispositive of this appeal, we need not address the defendants' other two claims.

[3] These special defenses alleged claims of fraud, estoppel, lack of ownership on the part of the plaintiff, lack of any tenancy, constructive trust, waiver and retaliatory eviction. Pursuant to Practice Book § 10-50, "advantage may be taken, under a simple denial, of such matters as . . . title in a third person to what the plaintiff sues upon or alleges to be the plaintiff's own."

[4] We note that the notice to quit and the amended complaint allege that the plaintiff is the landlord, or lessor, of the property, not that the plaintiff owned the property, but it was on the basis of the plaintiff's ownership that the court granted it immediate possession, as the court specifically ruled that there was never any lease between the parties. We disagree with the plaintiff's contention that, in their answer, the defendants admitted that the plaintiff is the owner of the premises.

[5] A "beneficial owner" includes an individual who owns and controls a corporation holding legal title to premises. See *Loew* v. *Falsey*, 144 Conn. 67, 74, 127 A.2d 67 (1956). Curcio, Jr., as the beneficial owner of JD's Café, can act as equitable owner and as the agent for JD's Café as the holder of the legal title. Id. The assertion by Curcio, Jr., of beneficial ownership neither adds to nor detracts from the defendants' claim that the plaintiff did not own the premises.

[6] On May 26, 2015, this court, pursuant to Practice Book §§ 60-2, 60-5 and 61-10 (b), sua sponte issued an order to the trial court to articulate the factual and legal basis for its conclusion that Curcio, Jr., conveyed title to the subject premises subsequent to 1995. In its articulation dated June 29, 2015, the trial court stated that it primarily had based its finding on the testimony of Curcio, Jr., that, in or before 2007, he had conveyed title to the subject premises to an acquaintance, Alvaro Albuquerque, for the purpose of obtaining a favorable interest rate on a mortgage. The court also relied on the evidence that, in 2007, Albuquerque transferred title to Curcio, Jr.'s mother, Judith Curcio, who later transferred title to J.D.'s Café.

[7] Contrary to the court's finding, the evidence is undisputed that the plaintiff is a corporation and Curcio, Sr., is its president.

[8] In making this determination, the court did not delineate any factual or legal basis for ruling against Curcio, Jr.'s claims that JD's Café was the actual owner, that Curcio, Jr., was the beneficial owner, or that the court should impose a constructive trust in his favor.

[9] Summary process is authorized under § 47a-23 despite the lack of a lease or rental agreement "where premises or any part thereof, is occupied by one who has no right or privilege to occupy said premises, or where one originally had the right or privilege to occupy said premises but such right or privilege has terminated and the owner or lessor . . . shall desire to

obtain possession or occupancy of the same." (Internal quotation marks omitted.) *Trinity United Methodist Church of Springfield, Massachusetts* v. *Levesque*, 88 Conn. App. 661, 666, 870 A.2d 1116, cert. denied, 274 Conn. 907, 908, 876 A.2d 1200 (2005).

[10] It is undisputed that, prior to this conveyance, the premises were conveyed by Curcio, Jr., individually, to his friend, Alvaro Albuquerque. Albuquerque subsequently granted a mortgage on the premises for the benefit of Curcio, Jr., who paid the mortgage obligation until 2008. That mortgage is the subject of a pending foreclosure action, filed in 2008 in the judicial district of Fairfield, in which Albuquerque and JD's Café are named defendants. At the time of trial, the plaintiff was not a named defendant in that action.

[11] In an affidavit annexed to the motion to dismiss, Curcio, Jr., also alleged that Cummings, without authority and without Curcio, Jr.'s knowledge, filed with the secretary of the state a notice of officer change concerning JD's Café, through which Cummings claimed to be an owner or agent of JD's Café. Furthermore, Cummings signed a letter resigning any position he purportedly had with JD's Café on July 19, 2007, long before he purportedly conveyed the premises to Cummings Enterprises on August 22, 2011. Cummings did not testify, and the allegedly false notice of officer change and the resignation letter were never introduced in evidence.

[12] Corporate records are generally prima facie evidence as to corporate matters therein recorded. 18 C.J.S. 451, Corporations § 153 (2007).

[13] The transcript of Hajducky's deposition testimony was introduced at trial as exhibit 6.

[14] Article V, § 3, of the bylaws pertains to the transfer of shares, and provides: "(a) Transfers of shares of the Corporation shall be made on the share records of the Corporation only by the holder of record thereof, in person or by his duly authorized attorney, upon surrender for cancellation of the certificate or certificates representing such shares, with an assignment or power of transfer endorsed thereon or delivered therewith, duly executed, with such proof of the authenticity of the signature and of authority to transfer and of payment of transfer taxes as the Corporation or its agents may require. (b) The Corporation shall be entitled to treat the holder of record of any share or shares as the absolute owner thereof for all purposes and, accordingly, shall not be bound to recognize any legal, equitable or other claim to, or interest in, such share or shares on the part of any other person, whether or not it shall have express or other notice thereof, except as otherwise expressly provided by law."

[15] The certificate of incorporation need not set forth any of the corporate powers authorized in the CBCA. See General Statutes § 33-636 (c). A corporation is endowed with all powers specifically granted to it by law, and all powers enumerated in the CBCA, without the necessity of setting forth any of them in its certificate of incorporation. See General Statutes § 33-647. Often, provisions for regulating the corporation's affairs will appear in the bylaws. M. Ford, Connecticut Corporation Law & Practice (2d Ed. 2014) § 3.01, p. 3-4. Bylaws are the "laws made by the corporation itself . . . ." *Hopewell Baptist Church* v. *Craig*, 143 Conn. 593, 599, 124 A.2d 220 (1956). "The bylaws of a corporation may contain any provision that is not inconsistent with law or the certificate of incorporation." General Statutes § 33-640 (b).

[16] In support of its claim of record title, the plaintiff offered into evidence testimony and exhibits concerning JD's Café's guarantee of a loan to another one of Curcio, Jr.'s business entities, Curcio Carting, Inc., in 2007. During the closing of this transaction, Cummings acted as president and sole shareholder of JD's Café with the knowledge of Curcio, Jr. The plaintiff also introduced a document filed in a bankruptcy by Curcio, Jr., in 2012, in which he did not report his claimed interest in JD's Café. The plaintiff argued that this evidence undermined Curcio, Jr.'s credibility as to his claim of continued ownership of JD's Café after 2007.

Our Supreme Court has held that "[if] the officers or the agents of a corporation assume to act for the corporation without any authority at all, or if they exceed their authority or act irregularly, and the act is one *which could have been authorized in the first instance* by the stockholders, board of directors or subordinate officers, as the case may be, it may be expressly or impliedly ratified by them, and thus be rendered just as binding, except as to intervening rights of third persons, as if it had been authorized when done, or done regularly." (Emphasis in original; internal quotation marks omitted.) *Community Collaborative of Bridgeport, Inc.* v. *Ganim*, 241 Conn. 546, 566, 698 A.2d 245 (1997).

In the present case, however, the plaintiff did not claim and the court did not find that these actions on the part of Curcio, Jr., constituted an explicit or implicit ratification of Cummings' assumption of the control of the JD's Café corporation. We are not confronted with a situation in which the court reasonably could have based its finding on shareholder ratification.

[17] Curcio, Sr., did not explain how he claims to have been, at one time, the beneficial owner of JD's Café. To achieve that status, he would have had to have owned and controlled the corporation, which the evidence plainly reflects he did not do.

[18] The transfer of corporate stock is governed by statute, specifically Article 8 of the Uniform Commercial Code (UCC). "A share or similar equity interest issued by a corporation . . . is a security." General Statutes § 42a-8-103 (a). Subsection (a) establishes an unconditional rule that ordinary corporate stock is a security. "That is so whether or not the particular issue is dealt in or traded on securities exchanges or in securities markets. Thus, shares of closely held corporations are article 8 securities." Conn. Gen. Stat. Ann. § 42a-8-103 (West 2009), UCC comment, p. 332. Under General Statutes § 42a-8-104 (a) (1), an individual acquires a security or an interest in the security under article 8 of the UCC if "[t]he person is a purchaser to whom a security is delivered pursuant to section 42a-8-301 . . . ." "The term 'certified security' means a security that is represented by a security certificate." Conn. Gen. Stat. Ann. § 42a-8-102 (West 2009), UCC comment, pp. 324–25. A purchaser is one who takes "by sale, lease, discount, negotiation, mortgage, pledge, lien, security interest, issue or reissue, gift or any other voluntary transaction creating an interest in property." General Statutes § 42a-1-201.

[19] General Statutes § 42a-8-301 provides: "(a) Delivery of a certificated security to a purchaser occurs when: (1) The purchaser acquires possession of the security certificate; (2) Another person, other than a securities intermediary, either acquires possession of the security certificate on behalf of the purchaser or, having previously acquired possession of the certificate, acknowledges that it holds for the purchaser; or (3) A securities intermediary acting on behalf of the purchaser acquires possession of the security certificate, only if the certificate is in registered form and is (i) registered in the name of the purchaser, (ii) payable to the order of the purchaser, or (iii) specially endorsed to the purchaser by an effective endorsement and has not been endorsed to the securities intermediary or in blank."

[20] Cummings did not testify at trial.

[21] Curcio, Sr., also testified that the defendants remained on the premises and that the plaintiff had not paid for any improvements to the property or any of the taxes or mortgage payments. Tax bills for the premises had not been received by the plaintiff. Neither Curcio, Jr., nor Smyers ever paid any rent to Curcio, Sr., Cummings or the plaintiff. Curcio, Jr., testified that he paid the mortgage, insurance and taxes on the property until about 2008, when the premises went into foreclosure.

[22] The evidence submitted regarding the loan transaction for Curcio Carting, Inc., established that, when acting on behalf of a corporation, Curcio, Jr., knew how to effectively consent, in writing, as sole shareholder and director, to the assumption of a debt obligation on behalf of the corporation.

[23] The plaintiff also asserts that the fact that record title is in its name is presumptively sufficient to establish its standing, but in the Superior Court case on which the plaintiff relies for that assumption, *Norling* v. *Anthony*, Superior Court, judicial district of Stamford-Norwalk, Docket No. CV-99-01756692 (January 2, 2001), there was no documented, counterevidence to demonstrate that the defendant had any higher title. *Norling* was a summary process action involving the eviction of the plaintiff's sister-in-law from a beach house that had been in the family for more than forty years. In that case, the defendant claimed that her occupancy of the property and payment of expenses, repairs and improvement were sufficient to prove ownership superior to the record title of the plaintiff, a claim that the trial court rejected.

The facts in *Norling* do not mirror the facts in the present case, as the plaintiff claims. The corporate documents submitted into evidence set forth the limited manner in which any individual would be empowered to act on behalf of JD's Café, and the weight of the evidence indicates that the transfer of the premises by JD's Café, which led to the plaintiff's later attaining record title, were accomplished without proper authority. Because the defendant, as the sole shareholder or director of JD's Café, did not legally or ultra vires authorize the transfer of control of JD's Café to Curcio, Sr., or Cummings, or the transfer of the premises from JD's Café to Cummings Enterprises, Inc., the evidence did not establish that proper legal title to the premises had been vested in the plaintiff. As the quitclaim deed from JD's Café to Cummings Enterprises was void, so was the subsequent quitclaim deed from Cummings Enterprises to the plaintiff.

[24] The plaintiff relied on its claim of legal ownership of the premises by way of record title and did not attempt to refute the obvious corporate irregularities involving the transfer of the premises from J.D.'s Café to Cummings Enterprises. It did not seek to pierce the corporate veil of JD's Café in this action, which would have involved a request to the court that the structure of JD's Café, as an entity, be disregarded so as to hold Curcio, Jr., personally responsible. See 18 Am. Jur. 2d 841, Corporations § 43 (1985). "Courts will disregard the fiction of separate legal entity when a corporation is a mere instrumentality or agent of another corporation or individual owning all or most of its stock. . . . Under such circumstances the general rule, which recognizes the individuality of corporate entities and the independent character of each in respect to their corporate transactions, and the obligations incurred by each in the course of such transactions, will be disregarded, where . . . the interests of justice and righteous dealing so demand. . . . The circumstance that control is exercised merely through dominating stock ownership, of course, is not enough. . . . There must be such domination of finances, policies and practices that the controlled corporation has, so to speak, no separate mind, will or existence of its own and is but a business conduit for its principal." (Internal quotation marks omitted.) *Hersey* v. *Lonrho, Inc.*, 73 Conn. App. 78, 86, 807 A.2d 1009 (2002). A request by the plaintiff to pierce the corporate veil of JD's Café would have proven difficult in the present case because the evidence did not disclose any action taken by Curcio, Jr., even individually, to convey the subject property to Cummings Enterprises.

[25] Curcio, Jr., admitted that he had represented to the Bankruptcy Court that he was not involved with JD's Café in any corporate capacity. Curcio, Sr., testified that he transferred ownership of the premises to Cummings because he was preparing for a possible bankruptcy, and that he later transferred ownership to the plaintiff for "other reasons." Judith Curcio testified that she took title to the mortgaged premises for a few days, under the direction of Curcio, Sr., because Albuquerque was having problems and the premises were in his name. She stated that she wanted to protect her son and to ensure that he could continue to live on the premises without problems from Albuquerque.

[26] "The one-shareholder stock corporation, with the shareholder as sole-director and president . . . generally ignores the organizational triad, even if that owner understands the theoretical distinctions among the elements. The corporation is truly the owner's alter ego for the venture, a thoroughly legitimate and expressly approved use of the statutory corporate form. The best counsel may be able to do in paying homage to the statutory norm is to document the owner's decisions . . . by written consents to the shareholder's and board of director's resolutions, a practice authorized by the CBCA." M. Ford, Connecticut Corporation Law & Practice (2d Ed. 2014) § 4.01, pp. 4-3 and 4-4. General Statutes § 33-698 (a) provides: "Action required or permitted under any provisions [of the CBCA] to be taken at a shareholders' meeting may be taken without a meeting if the action is taken by all the shareholders entitled to vote on the action. The action must be evidenced by one or more written consents bearing the date of signature and describing the action taken, signed by all the shareholders entitled to vote on the action and delivered to the corporation for inclusion in the minutes or filing with the corporate records."